UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ENRIQUE GONZALEZ LEIVA, § <br> ROGELIO CORONA TREJO, § <br> GABRIEL GARCIA ARROYO, § <br> VALENTIN GARCIA ARROYO, § <br> RAUL GONZALEZ LEYVA, § <br> LUIS LOPEZ CARRASCO, § <br> JOSE ALBINO LEYVA, § <br> SIMON GONZALEZ HERNANDEZ, and § <br> KIMBERLY DELGADO, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> WINDY PRAIRE FARM LLC, § <br> KEITH CLUTE, and § <br> SHAWN NOWER, § <br> § <br> Defendants. § | Civil Action <br> No. <br> <br> JURY DEMAND |

**PLAINTIFFS' COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION ACT AND OTHER LABOR LAWS**

**I. PRELIMINARY STATEMENT**

1. This is an action for damages and declaratory relief by nine migrant farmworkers against Defendants for violations of the federal Trafficking Victims Protection Act, the Migrant and Seasonal Agriculture Worker Protection Act, the Fair Labor Standards Act, and for violations of Indiana state law.

2. Plaintiffs, by counsel, Indiana Legal Services, Inc., seek compensatory damages, liquidated damages, punitive damages, and legal costs.

**II. JURISDICTION**

3. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, 18 U.S.C. § 1595(a), 29 U.S.C. § 1854(a), and 29 U.S.C. § 316(b).

1

4. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

### III. PARTIES

6. Plaintiffs are Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, Jose Albino Leyva, and Kimberly Delgado.

7. Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, and Jose Albino Leyva are Mexican citizens who at all times material were lawfully admitted to the United States on temporary H-2A work visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

8. Plaintiff Kimberly Delgado is a United States citizen and was at all times material a migrant agricultural worker within the meaning of 29 U.S.C. § 1802(8)(A).

9. Defendants are Windy Prairie Farm LLC, Keith Clute, and Shawn Nower.

10. Defendant Windy Prairie Farm LLC was a domestic for-profit corporation organized under the laws of Indiana in 2014 with its principal place of business in Fowler, Indiana.

11. Defendant Windy Prairie Farm was an "employer" who had "job opportunities" to whom United States and H-2A program workers could be referred.

12. Defendant Windy Prairie Farm may be served with process throught its registered agent and attorney, Daniel C. Blaney, Blaney & Walton, 124 East State Street, P.O. Box 500, Morocco, Indiana 47963; e-mail dblaney@blaneyandwalton.com.

13. Defendant Windy Prairie Farm was administratively dissolved and became inactive on March 3, 2019.

14. Defendant Keith Clute at all times material was the owner and operator of Windy Prairie Farm, 1112 South 300 East, Fowler, IN 47944.

15. Defendant Keith Clute is a resident of Benton County, Indiana.

16. Defendant Shawn Nower at all times material was an employee and manager of Windy Prairie Farm, 1112 South 300 East, Fowler, IN 47944.

17. Defendant Shawn Nower is a resident of Benton County, Indiana, and domestic partner of Defendant Keith Clute.

## IV. FACTS

### A. OVERVIEW OF H-2A TEMPORARY WORKER PROGRAM

18. An agricultural employer in the United States may employ temporary foreign workers ("H-2A workers") for certain positions if the United States Department of Labor ("USDOL") certifies (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of similarly employed U.S. workers. *See* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

19. These provisions along with the implementing federal regulations govern the H-2A program.

20. Under the H-2A program, employers must file a temporary a labor certification application with the USDOL's Employment and Training Administration. *See* 20 C.F.R. § 655.130. The application must include a job offer, known as a "job order," which is used to recruit both U.S. and H-2A workers.

21. By operation of law, the job order becomes the work contract for the workers employed under the program. *See* 20 C.F.R. § 655.103(b).

22. If an employer's job order meets the minimum federal regulatory requirements and is otherwise valid under the H-2A program, U.S. worker availability is tested through the interstate Employment Services system[1] and by the employer's own hiring efforts. If it is determined sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the United States Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

23. The job order must comply with H-2A regulations establishing the minimum benefits, wages, and working conditions that must be offered in order to avoid adversely affecting similarly employed U.S. workers. *See* 20 C.F.R. § 655.121(a)(3).

24. The H-2A regulation requirements include:

    (a) If the worker is paid by the hour, the employer must pay the worker at least the Adverse Effect Wage Rate ("AEWR") or the federal or state minimum wage rate in effect at the time work is performed whichever is highest. *See* 20 C.F.R. § 655.121(1).

    (b) If the worker is paid on a piece rate basis and the worker's earnings do not result in average earnings of at least the AEWR, the worker's pay must be supplemented so the worker's earnings are at least as much as the worker would have earned had the worker been paid the AEWR. *See* 20 C.F.R. § 655.122(1)(2)(i).

---

[1] Employment Services (ES) refers to the national system of public ES offices described under the Wagner-Peyser Act, 29 U.S.C. §§ 49 et seq. Employment services are delivered through a nationwide system of one-stop centers, managed by State Workforce Agencies (SWAs), and funded by the USDOL. *See* 20 C.F.R. § 651.10.

(c) The employer either must provide each worker with three meals per day or must furnish free and convenient kitchen facilities to the workers so the workers can prepare their own meals. *See* 20 C.F.R. § 655.122(g).

(d) The employer must guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours are not offered. *See* 20 C.F.R. § 655.122(i) (known as the "3/4 guarantee").

(e) The employer must provide housing to the workers, free of charge, and the housing must meet federal standards. *See* 20 C.F.R. § 655.122(d).

(f) The employer must keep accurate and adequate records of the workers' earnings, including: the worker's rate of pay, the hours worked, the worker's earnings, the nature of the work, and the amount of and reasons for any deductions taken from the worker's wages. *See* 20 C.F.R. § 655.122(j)(1).

(g) The employer must furnish each worker on or before each payday a written statement that includes: the worker's total earnings for the pay period, the worker's hourly rate or piece rate of pay, the hours of employment offered, the hours actually worked by the worker, an itemization of all deductions made from the worker's wages, and, if piece rates are used, the units produced daily. *See* 20 C.F.R. § 655.122(k).

### B. OVERVIEW OF DEFENDANTS' LABOR TRAFFICKING OF PLAINTIFFS UNDER H-2A TEMPORARY WORKER PROGRAM

25. Defendants solicited, recruited, and hired Plaintiffs to perform agriculture work in Benton County, Indiana during the 2019 planting and harvesting seasons through the federal H-2A temporary worker program.

26. Defendants were unable to hire U.S. workers to work on their farm due to their reputation for failing to pay creditors and employees. *See, e.g., Rite-Way Concrete Seal Systems, Inc. v. Windy Prairie Farms, LLC*, Case No. 04C01-1802-PL-000015 (Benton Cir. Ct.).

27. Unable to retain employees in the United States, Defendants intentionally lured Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, and Jose Albino Leyva from Mexico and Plaintiff Kimberly Delgado from Florida to the Midwest to perform agricultural work.

28. Defendants made promises to Plaintiffs to pay certain hourly wages and travel expenses, provide adequate housing, and provide other benefits as part of the employment agreement.

29. Once Plaintiffs traveled to the Midwest, however, Defendants intentionally broke those promises.

30. Among other things, Defendants failed to pay Plaintiffs the promised wages and reimburse Plaintiffs for travel costs and visa fees.

31. Defendants also housed Plaintiffs in substandard housing conditions, made abusive threats of serious harm against Plaintiffs, and purposefully misrepresented Plaintiffs' rights under U.S. law in order to force and unlawfully coerce Plaintiffs to continue to work for little to no pay.

### C. INCEPTION OF DEFENDANTS' SCHEME OF LABOR TRAFFICKING

32. On or about December 2018, Defendants Windy Prairie Farm and Keith Clute submitted Job Order Number 9128748 ("Job Order") to the Indiana Department of Workforce

      Development and an Application for Temporary Employment Certification to the USDOL.

33. The approved Job Order, attached and incorporated into the Complaint as Exhibit A, included the following terms and guarantees:

    (a) Work to begin on February 20, 2019 and continue until November 30, 2019.

    (b) Anticipated hours of work of at least 40 hours per week.

    (c) Job duties to include: "manually plant, hoe, weed, irrigate, clean, spray, load/unload bins and trucks; till soil and apply fertilizers; transplant, weed thin, prune, cultivate, and harvest field crops . . . use hand tools such as shovels, trowels, hoes, tampers, prune hooks, shears, and knives.  Employer will train for two working days (16 hours) on this job description."

    (d) An hourly wage of not less than the AEWR, or $13.26 per hour.

    (e) Bi-weekly pay period.

    (f) Free housing that meets local, state and federal requirements including "a full bathroom plus a fully functioning kitchen area . . . Each worker will have their own bed."

    (g) Guaranteed employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours were not offered.

    (h) Assurance that the employer will reimburse the worker for transportation costs and subsistence to the worksite when the worker completes fifty percent of the work period.

34. The terms and conditions of the Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer to Plaintiffs.

35. This job offer, when accepted, created a work contract between Defendants and each Plaintiff.

36. The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and TVPA. *See* 20 C.F.R. § 655.135(e).

37. By promising to pay the federally mandated wage rate, Defendants also promised to pay that wage free and clear without deductions for items for the employer's benefit and without reducing the workers' wages by shifting costs to those workers.

### D. DEFENDANTS' RECRUITING OF PLAINTIFFS FOR LABOR TRAFFICKING

38. Defendants recruited Plaintiffs in their hometowns in Mexico and Florida to work under the terms of the Job Order.

39. Plaintiffs accepted the offers of employment under the terms of the Job Order.

40. At all times relevant, each Plaintiff was an "employee" of the Defendants within the meaning of 29 U.S.C. § 203(e) and 29 C.F.R. § 500.20(h)(3).

41. At all times relevant, Defendants were each of Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d)

42. At all times relevant, Defendants employed Plaintiff Delgado within the meaning of 29 U.S.C. § 1802(5).

43. At all times relevant to this action, Plaintiffs were "employed" by Defendants within the meaning of 29 U.S.C § 203(g).

44. The eight Mexican citizen Plaintiffs are indigent and speak and read primarily Spanish.

8

45. Plaintiff Kimberly Delgado, a U.S. citizen, is indigent and is bilingual in English and Spanish.

46. Plaintiff Delgado was recruited in Florida and received an oral offer of employment to work for Defendants in Indiana.

47. All Plaintiffs were economically dependent on Defendants for their wages during their employment.

48. All Plaintiffs were dependent on Defendants to provide them with employment, housing, transportation, and tools and equipment necessary to perform the required work.

49. Defendants had the power to hire and fire Plaintiffs and control their conditions of employment.

50. At all times relevant to this action, Defendants employed Plaintiffs as defined by the parties' employment contract.  *See* 20 C.F.R. § 655.103(b).

51. At all times relevant to this action, Defendants had the right to control the manner and means by which Plaintiffs' work was accomplished.

52. Under Defendants' employment, Plaintiffs were planting and harvesting produce for sale in interstate commerce.

53. Under Defendants' employment, Plaintiffs handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

54. Defendants recruited workers in Mexico and Florida and required, as a condition of hire, that each Plaintiff from Mexico pay a sum of money to cover visa expenses, hotel and subsistence costs, and travel expenses to get to Indiana.

55. Plaintiffs from Mexico entered the U.S. on or around April 3, 2019.

56. The expenses described were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of Defendants.

57. Defendants did not reimburse Plaintiffs for any of the expenses described and as promised.

58. Defendants' failure to reimburse Plaintiffs for these expenses brought Plaintiffs' first week wages below the federal minimum wage and the AEWR.

### E. DEFENDANTS' LABOR TRAFFICKING OF PLAINTIFFS

#### i. Labor Conditions

59. Plaintiffs worked for Defendants at Windy Prairie Farm planting and harvesting produce.

60. Plaintiffs began working immediately after they arrived in Indiana in April 2019.

61. Plaintiffs worked seven (7) days a week and more than sixty (60) hours per week.

62. Defendants never trained Plaintiffs as promised in the Job Order.

63. Defendants made Plaintiffs perform job duties outside of the contract by requiring them to drive tractors and operate large machinery.

64. Defendants stopped paying Plaintiffs after the first week of June 2019.

65. Plaintiffs confronted Defendants about the failure to pay them.

66. Defendants assured Plaintiffs payment would come shortly.

67. Defendants promised future payment to Plaintiffs intending not to pay Plaintiffs.

68. Each subsequent week, Defendants offered an excuse for not paying Plaintiffs.

69. When Plaintiffs expressed concern about the need for money for food and other necessities, Defendants grew angry and yelled at Plaintiffs.

70. After a month of working seven days per week and more than sixty hours per week without pay, Plaintiffs took time off from work.

71. Plaintiffs during this time remained in the employer-provided housing for four days.

72. When Plaintiffs exercised their right under the Job Order to take up to five consecutive days off, Defendant Keith Clute threatened them.

73. Defendant Keith Clute told Plaintiffs that if they did not work he would report them to federal immigration officials, that they would be deemed by immigration officials to be "illegal," and that Plaintiffs would be forced to return home without pay.

74. Plaintiffs did not wish to jeopardize their immigration status and reasonably believed that the only way they could recover their back wages and avoid adverse immigration consequences was to continue to work for Defendants.

75. Therefore, Plaintiffs returned to work even though they had not been paid for weeks and had little money, even for food.

76. Plaintiffs continued to work long weeks without pay through August 2019

77. In order to further deceive Plaintiffs with an offer of pay, Defendant Keith Clute promised Plaintiffs a "bonus" payment at the end of harvest.

78. Defendant Keith Clute offered Plaintiffs this payment with intention not to pay.

79. Plaintiffs' weekly earnings from June 2019 through August 2019 was zero, below the contractually promised wage of $13.26 per hour.

80. Defendants did not supplement Plaintiffs' weekly earnings to ensure they received the wages required by the FLSA and their employment contracts.

81. Defendants failed to make, keep, preserve, and retain accurate employment records, as required by FLSA, 29 C.F.R. § 516.2(a), and by the H-2A regulations, 20 C.F.R. § 655.122(j), and failed to provide Plaintiffs with complete and regular earnings statements containing the information required by the H-2A regulations, 20 C.F.R. § 655.122(k).

### ii. Living Conditions

82. Defendants housed Plaintiffs in a motel in Kentland, Indiana, that did not have enough beds for Plaintiffs to sleep in.

83. Plaintiffs were forced to share beds or sleep on the floor.

84. Defendants were moved to the motel after Defendants initially forced Plaintiffs to sleep on the floor of a refrigerated storage unit.

85. The motel where Plaintiffs lived did not have adequate kitchen facilities.

86. Defendants failed to provide Plaintiffs with meals as promised.

87. Plaintiffs went hungry, had to ration their food and, eventually, had to rely on humanitarian assistance from the Mexican Consulate.

### iii. Threats of Violence, Serious Harm, & Abuse of Law

88. Further, Defendants threatened or caused Plaintiffs to be threatened with deportation if they left Defendants' employment.

89. Defendants threatened Plaintiffs saying those who left their employment would also be unable to receive the wages owed to them.

90. Defendants threatened or caused Plaintiffs to be threatened that those who left employment would be unable to return to the United States with another H-2A visa.

91. Plaintiffs continued to work for Defendants and/or returned to work for Defendants because they feared they would not receive any of the wages owed.

92. Plaintiffs continued to work for Defendants and/or returned to work for Defendants because they feared being unable to repay the loans they were induced to take, they feared being deported, and/or they feared being unable to return to the United States with an H-2A visa in the future.

93. When the USDOL began its investigation of Defendants business operation, Defendant Keith Clute told Plaintiff Kimberly Delgado that he would strangle whoever filed the complaint against him with the USDOL.

94. Plaintiffs were reasonably placed in fear of their physical safety by Defendant Keith Clute.

95. Defendant Keith Clute instructed Plaintiffs to lie to the USDOL about whether he had paid them the required wages owed to them.

96. When Plaintiffs left Defendants' employment, they were owed substantial amounts of back wages and had no financial resources to return to their homes hundreds of miles away from Indiana.

## V.  CLAIMS FOR RELIEF

### COUNT I: TRAFFICKING VICTIMS PROTECTION ACT

97. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs.

98. Plaintiffs make claims against Defendants for violations of the Trafficking Victims Protection Act, 18 U.S.C. § 1595, for trafficking with respect to involuntary servitude, forced labor, and attempted forced labor.  *See* 18 U.S.C. §§ 1590, 1581, 1584, 1589, and 1594.

99. Defendants knowingly recruited and obtained Plaintiffs' labor and services.

100. Defendants recruited and obtained Plaintiffs' labor and services knowing they owed creditors a substantial amount of money.

101. Defendants recruited and obtained Plaintiffs' labor and services knowing they did not have the resources to pay them.

102. Defendants recruited and obtained Plaintiffs' labor and services knowing the restrictions on the Mexican citizen Plaintiffs' visas meant they could not leave their employment if they stopped paying them.

103. Defendants knowingly obtained Plaintiffs' labor and services by:

    (a) Serious harm or threats of serious harm;

    (b) Abuse or threatened abuse of law or legal process; and/or

    (c) A scheme intended to cause Plaintiffs to believe that if they did not perform labor or services for Defendants, they would suffer serious harm or physical restraint.

104. Defendants knowingly induced Plaintiffs to take out loans to pay visa and travel fees to compel Plaintiffs or to attempt to compel Plaintiffs to continue working for Defendants in order to pay off their loans.

105. Defendants threatened Plaintiffs with serious negative immigration consequences to prevent or to attempt to prevent them from leaving.

106. Defendants threatened Plaintiffs with serious negative financial consequences as described in paragraphs to prevent or to attempt to prevent them from leaving.

107. Defendants subjected Plaintiffs to substandard housing conditions and gave them little to no pay so they could not afford to buy food and travel home.

108. As a result of these acts, Plaintiffs seek compensatory and punitive damages.

### COUNT II:  MIGRANT AND SEASONAL AGRICULTURE WORKER PROTECTION ACT

109. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs.

110. Defendants intentionally violated Plaintiff Kimberly Delgado's rights under the Migrant and Seasonal Agriculture Worker Protection Act ("AWPA") by:

(a) Failing to provide required written disclosures at the time of the worker's recruitment in Florida, 29 U.S.C. § 1821(a);

(b) Failing to post a notice at the place of employment setting forth the worker's rights under the AWPA, 29 U.S.C. § 1821(b);

(c) Failing to provide and post all disclosures required by 29 U.S.C. § 1821(a) – (c) in the workers' language, 29 U.S.C. 1821(g);

(d) Failing to pay wages owed when due, 29 U.S.C. 1822(a);

(e) Violating the terms of the working arrangement without justification, 29 U.S.C. § 1822(c);

(f) Intimidating, threatening, restraining, and discriminating against the workers for exercising their rights and protections under the AWPA, 29 U.S.C. § 1855.

111. For each such violation of the AWPA, Plaintiff Delgado is entitled to recover their actual damages or up to $500 in statutory damages.

## COUNT III: FAIR LABOR STANDARDS ACT

112. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs.

113. Defendants failed to pay Plaintiffs at least the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

114. The violations resulted, in part, from Defendants' failure to pay Plaintiffs for their first week of work.

115. The violations resulted, in part, from Defendants' failure to reimburse the expenses which Plaintiffs incurred primarily for the benefit of Defendants. These expenses brought Plaintiffs' earnings below the required minimum hourly wage rate.

116. The violations set forth in this Count also resulted, in part, from Defendants' failure to compensate Plaintiffs for the time they spent performing agriculture work.

117. Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA, Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they earned less than the applicable minimum wage.

## COUNT IV: STATE LAW BREACH OF CONTRACT - WAGES

118. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

119. Defendants offered employment on the terms and conditions set out in the Job Order.

120. Plaintiffs accepted Defendants' offers.

121. Among the terms Defendants offered and Plaintiffs accepted were promises to:

    (a) Pay the applicable AEWR for each hour worked.

    (b) Pay Plaintiffs biweekly.

    (c) Guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours are not offered.

    (d) Furnish to Plaintiffs on each pay period a written earning statement accurately showing the total earnings for the pay period, hourly rate, hours of employment offered, hours actually worked, itemization of all deductions from wages, the beginning and ending dates of the pay period, and the employer's name, address, and federal employer identification number.

122. Defendants failed to pay Plaintiffs at least the AEWR of $13.26 per hour.

123. Defendants failed to pay Plaintiffs every pay period as required by the contract.

124. Defendants failed to maintain earning records, in violation of 20 C.F.R. § 655.122(j).

125. Defendants failed to furnish to Plaintiffs on each pay period a written earning statement, in violation of 20 C.F.R. § 655.122(k).

126. Defendants therefore breached their employment contracts with Plaintiffs.

127. As a direct consequence of Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

128. Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breaches, and Plaintiffs are entitled to damages including unpaid wages.

### COUNT V:  STATE LAW BREACH OF CONTRACT – HOUSING

129. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

130. Defendants offered employment on the terms and conditions set out in the Job Order.

131. Among the terms Defendants offered and Plaintiffs accepted were promises to:
    (a) Provide free housing with kitchen facilities that met local, state and federal requirements.
    (b) Provide meals or adequate kitchen facilities with utensils to allow workers to cook their own meals.
    (c) Defendants' Job Order states more specifically that Defendants' leased rooms at the Kentland Motel in which each room has "two beds to three beds and a full bathroom plus a fully functioning kitchen area."  And: "Each worker will have their own bed."

132. Plaintiffs accepted Defendants' offers.

133. Defendants failed to provide free housing that met local, state and federal requirements.

134. Defendants failed to provide Plaintiffs with adequate kitchen facilities or meals.

135. The violations resulted, in part, from Defendants failure to provide adequate food storage and prepping facilities.

136. The violations resulted, in part, from Defendants' failure to provide adequate housing.

137. The violations resulted, in part, from Defendants' failure to provide housing that was not overcrowded.

138. The violations resulted, in part, from Defendants' failure to provide beds for each worker.

139. Defendants therefore breached their employment contract with Plaintiffs.

140. As a direct consequence of Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

141. Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breaches, and Plaintiffs are entitled to damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court:

A. Grant judgment against Defendants in favor of each Plaintiff in the amount of their respective unpaid wages as proved at trial plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

B. Grant judgment against Defendants in favor of each Plaintiff in the amount of each Plaintiff's damages as they arose naturally and according to the usual course of things from such breach and such as the parties contemplated when the contract was made as the probable result of such breach;

C. Grant judgment against Defendants in favor of each Plaintiff in the amount of their compensatory damages for Defendants' violations of the TVPA as proved at trial, including the promised contractual hourly wage for Plaintiffs' work as well as punitive damages, and damages for the emotional harm that Defendants' TVPA violations caused;

D. Grant judgement against Defendants in favor of Plaintiff Kimberly Delgado in the amount of her statutory or actual damages pursuant to the AWPA;

E. Award Plaintiffs' pre- and post-judgment interest as allowed by law;

F. Award Plaintiffs' attorney's fees and the costs of this action; and

G. Award Plaintiffs all other just and proper relief.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all triable issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ Kristin A. Hoffman
Kristin A. Hoffman, #33729-49
Indiana Legal Services, Inc.
Worker Rights and Protection Project
151 North Delaware Street, Suite 1800
Indianapolis, IN 46204
Tel. (317) 829-3068
kristin.hoffman@ilsi.net

/s/ David W. Frank
David W. Frank, #31615-02
Indiana Legal Services, Inc.
8 North 3rd Street, Suite 102
Lafayette, IN 47901
Tel. (765) 423-5327
david.frank@ilsi.net

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this _____ day of September, 2019, a copy of the foregoing Complaint and was filed electronically.

  Notice of this filing and a copy of the complaint will be mailed via certified U.S. Mail on the _____ day of September, 2019 to the following Defendants and their counsel:

Windy Prairie Farm LLC
c/o Daniel C. Blaney, Esq.
124 East State Street, P.O. Box 500
Morocco, IN 47963

Keith Clute
1112 S. 300 E.
Fowler, IN 47944

Shawn Nower
1112 S. 300 E.
Fowler, IN 47944

/s/ Kristin A. Hoffman
Attorney for Plaintiffs