**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| ENRIQUE GONZALEZ LEIVA, | § | |
| ROGELIO CORONA TREJO, | § | |
| GABRIEL GARCIA ARROYO, | § | |
| VALENTIN GARCIA ARROYO, | § | |
| RAUL GONZALEZ LEYVA, | § | |
| LUIS LOPEZ CARRASCO, | § | Case No. 4:19-cv-00087-TLS-JPK |
| JOSE ALBINO LEYVA, | § | |
| SIMON GONZALEZ HERNANDEZ, and | § | |
| KIMBERLY DELGADO, | § | JURY DEMAND |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| WINDY PRAIRE FARM LLC, | § | |
| KEITH CLUTE, and | § | |
| SHAWN NOWER, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

## I.  PRELIMINARY STATEMENT

1.      This is an action for damages and declaratory relief by nine migrant farmworkers against

Defendants for violations of the federal Trafficking Victims Protection Act, the Migrant

and the Seasonal Agriculture Worker Protection Act, and the Fair Labor Standards Act,

and for violations of Indiana state law.

2.      Plaintiffs, by counsel, seek compensatory damages, liquidated damages, punitive

damages, and legal costs.

## II.  JURISDICTION

3.      The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331,

28 U.S.C. § 1337, 18 U.S.C. § 1595(a), 29 U.S.C. § 1854(a), and 29 U.S.C. § 316(b).

1

4.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

### III. PARTIES

6.     Plaintiffs are Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, Jose Albino Leya, and Kimberly Delgado.

7.     Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, and Jose Albino Leya are Mexican citizens who at all times material were lawfully admitted to the United States on temporary H-2A work visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

8.     Plaintiff Kimberly Delgado is a United States citizen and was at all times material a migrant agricultural worker within the meaning of 29 U.S.C. § 1802(8)(A).

9.     Defendants are Windy Prairie Farm LLC, Keith Clute, and Shawn Nower.

10.    Defendant Windy Prairie Farm LLC was a domestic for-profit corporation organized under the laws of Indiana in 2014 with its prinipal place of business in Fowler, Indiana.

11.    Defendant Windy Prairie Farm was an "employer" who had "job opportunities" to whom United States and H-2A program workers could be referred.

12.    Defendant Windy Prairie Farm may be served with process through its registered agent and attorney, Daniel C. Blaney, Blaney & Walton, 124 East State Street, P.O. Box 500, Morocco, Indiana 47963; e-mail: dblaney@blaneyandwalton.com.

13.    Defendant Windy Prairie Farm was administratively dissolved on March 3, 2019.

14.     Defendant Keith Clute at all times material was the owner and operator of Windy Prairie
        Farm, 1112 South 300 East, Fowler, IN 47944.

15.     Defendant Keith Clute is a resident of Benton County, Indiana.

16.     Defendant Shawn Nower at all times material was an employee and manager of Windy
        Prairie Farm, 1112 South 300 East, Fowler, IN 47944.

17.     Defendant Shawn Nower is a resident of Benton County, Indiana.

## IV. FACTS

### A. OVERVIEW OF H-2A TEMPORARY WORKER PROGRAM

18.     An agricultural employer in the United States may employ temporary foreign workers
        ("H-2A workers") for certain positions if the United States Department of Labor
        ("USDOL") certifies (1) there are not enough U.S. workers to perform the job, and (2)
        the employment of H-2A workers will not adversely affect the wages and working
        conditions of similarly employed U.S. workers.  *See* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a)
        and 1188(a)(1).

19.     These provisions along with the implementing federal regulations govern the H-2A
        program.

20.     Under the H-2A program, employers must file a temporary a labor certification
        application with the USDOL's Employment and Training Administration.  *See* 20 C.F.R.
        § 655.130.  The application must include a job offer, known as a "job order," which is
        used to recruit both U.S. and H-2A workers.

21.     By operation of law, the job order becomes the work contract for the workers employed
        under the program.  *See* 20 C.F.R. § 655.103(b).

3

22.    If an employer's job order meets the minimum federal regulatory requirements and is otherwise valid under the H-2A program, U.S. worker availability is tested through the interstate Employment Services system[1] and by the employer's own hiring efforts.  If it is determined sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the United States Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

23.    The job order must comply with H-2A regulations establishing the minimum benefits, wages, and working conditions that must be offered in order to avoid adversely affecting similarly employed U.S. workers.  *See* 20 C.F.R. § 655.121(a)(3).

24.    The H-2A regulation requirements include:

(a) If the worker is paid by the hour, the employer must pay the worker at least the Adverse Effect Wage Rate ("AEWR") or the federal or state minimum wage rate in effect at the time work is performed whichever is highest.  *See* 20 C.F.R. § 655.121(1).

(b) If the worker is paid on a piece rate basis and the worker's earnings do not result in average earnings of at least the AEWR, the worker's pay must be supplemented so the worker's earnings are at least as much as the worker would have earned had the worker been paid the AEWR.  *See* 20 C.F.R. § 655.122(1)(2)(i).

(c) The employer either must provide each worker with three meals per day or must furnish free and convenient kitchen facilities to the workers so the workers can prepare their own meals.  *See* 20 C.F.R. § 655.122(g).

---

[1] Employment Services (ES) refers to the national system of public ES offices described under the Wagner-Peyser Act, 29 U.S.C. §§ 49 et seq.  Employment services are delivered through a nationwide system of one-stop centers, managed by State Workforce Agencies (SWAs), and funded by the USDOL.  *See* 20 C.F.R. § 651.10.

(d) The employer must guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours are not offered.  *See* 20 C.F.R. § 655.122(i) (known as the "3/4 guarantee").

(e) The employer must provide housing to the workers, free of charge, and the housing must meet federal standards.  *See* 20 C.F.R. § 655.122(d).

(f) The employer must keep accurate and adequate records of each worker's earnings, including: the worker's rate of pay, the hours worked, the worker's earnings, the nature of the work, and the amount of and reasons for any deductions taken from the worker's wages.  *See* 20 C.F.R. § 655.122(j)(1).

(g) The employer must furnish each worker on or before each payday a written statement that includes: the worker's total earnings for the pay period, the worker's hourly rate or piece rate of pay, the hours of employment offered, the hours actually worked by the worker, an itemization of all deductions made from the worker's wages, and, if piece rates are used, the units produced daily.  *See* 20 C.F.R. § 655.122(k).

**B. OVERVIEW OF DEFENDANTS' LABOR TRAFFICKING OF PLAINTIFFS UNDER H-2A TEMPORARY WORKER PROGRAM**

25.     Defendants solicited, recruited, and hired Plaintiffs to perform agriculture work in Benton County, Indiana during the 2019 planting and harvesting seasons through the federal H-2A temporary worker program.

26.     Defendants were unable to hire U.S. workers to work on their farm due to their reputation for failing to pay creditors and employees.  *See, e.g., Rite-Way Concrete Seal Systems, Inc. v. Windy Prairie Farms, LLC*, Case No. 04C01-1802-PL-000015 (Benton Cir. Ct.).

27.     Unable to retain employees in the United States, Defendants intentionally lured Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, and Jose Albino Leya from Mexico and Plaintiff Kimberly Delgado from Florida to the Midwest to perform agricultural work.

28.     Defendants made promises to Plaintiffs to pay certain hourly wages and travel expenses, provide adequate housing, and provide other benefits of as part of the employment agreement.

29.     Once Plaintiffs traveled to the Midwest, however, Defendants intentionally broke those promises.

30.     Among other things, Defendants failed to pay Plaintiffs the promised wages and reimburse Plaintiffs for travel costs and visa fees.

31.     Defendants also housed Plaintiffs in substandard housing conditions, made abusive threats of serious harm against Plaintiffs, and purposefully misrepresented Plaintiffs' rights under U.S. law in order to force and unlawfully coerce Plaintiffs to continue to work for little to no pay.

**C. INCEPTION OF DEFENDANTS' SCHEME OF LABOR TRAFFICKING**

32.     On or about December 2018, Defendants Windy Prairie Farm and Keith Clute submitted Job Order Number 9128748 ("Job Order") to the Indiana Department of Workforce Development and an Application for Temporary Employment Certification to the USDOL.

33.     The approved Job Order, attached and incorporated into the Complaint as Exhibit A, included the following terms and guarantees:

(a) Work to begin on February 20, 2019 and continue until November 30, 2019.

(b) Anticipated hours of work of at least 40 hours per week.

(c) Job duties to include: "manually plant, hoe, weed, irrigate, clean, spray, load/unload bins and trucks; till soil and apply fertilizers; transplant, weed thin, prune, cultivate, and harvest field crops . . . use hand tools such as shovels, trowels, hoes, tampers, prune hooks, shears, and knives.  Employer will train for two working days (16 hours) on this job description."

(d) An hourly wage of not less than the AEWR, or $13.26 per hour.

(e) Bi-weekly pay period.

(f) Free housing that meets local, state, and federal requirements including "a full bathroom plus a fully functioning kitchen area . . . Each worker will have their own bed."

(g) Guaranteed employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours were not offered.

(h) Assurance that the employer will reimburse the worker for transportation costs and subsistence to the worksite when the worker completes fifty percent of the work period.

34. The terms and conditions of the Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer to Plaintiffs.

35. This job offer, when accepted, created a work contract between Defendants and each Plaintiff.

36.  The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws". *See* 20 C.F.R. § 655.135(e).

37.  By promising to pay the federally mandated wage rate, Defendants also promised to pay that wage free and clear without deductions for items for the employer's benefit and without reducing the workers' wages by shifting costs to those workers.

### D.  DEFENDANTS' RECRUITING OF PLAINTIFFS FOR LABOR TRAFFICKING

38.  Defendants recruited Plaintiffs in their hometowns in Mexico and Florida to work under the terms of the Job Order.

39.  Plaintiffs accepted the offers of employment under the terms of the Job Order.

40.  At all times relevant, each Plaintiff was an "employee" of the Defendants within the meaning of 29 U.S.C. § 203(e) and 29 C.F.R. § 500.20(h)(3).

41.  At all times relevant, Defendants were each of Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d) .

42.  At all times relevant, Defendants employed Plaintiff Delgado within the meaning of 29 U.S.C. § 1802(5).

43.  At all times relevant to this action, Plaintiffs were "employed" by Defendants within the meaning of 29 U.S.C § 203(g).

44.  The eight Mexican citizen Plaintiffs are indigent and speak and read primarily Spanish.

45.  Plaintiff Kimberly Delgado, a U.S. citizen, is indigent and is bilingual in English and Spanish.

46.  Plaintiff Delgado was recruited in Florida and received an oral offer of employment to work for Defendants in Indiana.

8

47.   All Plaintiffs were economically dependent on Defendants for their wages during their employment.

48.   All Plaintiffs were dependent on Defendants to provide them with employment, housing, transportation, and tools and equipment necessary to perform the required work.

49.   Defendants had the power to hire and fire Plaintiffs and control their conditions of employment.

50.   At all times relevant to this action, Defendants employed Plaintiffs as defined by the parties' employment contract.  *See* 20 C.F.R. § 655.103(b).

51.   At all times relevant to this action, Defendants had the right to control the manner and means by which Plaintiffs' work was accomplished.

52.   Under Defendants' employment, Plaintiffs were planting and harvesting produce for sale in interstate commerce.

53.   Under Defendants' employment, Plaintiffs handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

54.   Defendants recruited workers in Mexico and Florida and required, as a condition of hire, that each Plaintiff from Mexico pay a sum of money to cover visa expenses, hotel and subsistence costs, and travel expenses to get to Indiana.

55.   Plaintiffs from Mexico entered the U.S. on or around April 3, 2019.

56.   The expenses described were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of Defendants.

57.   Defendants did not reimburse Plaintiffs for any of the expenses described and as promised.

58.   Defendants' failure to reimburse Plaintiffs for these expenses brought Plaintiffs' first week wages below the federal minimum wage and the AEWR.

### E. DEFENDANTS' LABOR TRAFFICKING OF PLAINTIFFS

#### i. Labor Conditions

59.   Plaintiffs worked for Defendants at Windy Prairie Farm planting and harvesting produce.

60.   Plaintiffs began working for Defendants immediately after they arrived at the job site in Indiana in April 2019.

61.   Plaintiffs worked seven (7) days a week and more than sixty (60) hours per week.

62.   Defendants never trained Plaintiffs as promised in the Job Order.

63.   Defendants made Plaintiffs perform job duties outside of the contract by requiring them to drive tractors and operate large machinery.

64.   Defendants stopped paying Plaintiffs after the first week of June 2019.

65.   Plaintiffs confronted Defendants about the failure to pay them.

66.   Defendants assured Plaintiffs payment would come shortly.

67.   Defendants promised future payment to Plaintiffs intending not to pay Plaintiffs.

68.   Each subsequent week, Defendants offered an excuse for not paying Plaintiffs.

69.   When Plaintiffs expressed concern about the need for money for food and other necessities, Defendants grew angry and yelled at Plaintiffs.

70.   After a month of working seven days per week and more than sixty hours per week without pay, Plaintiffs took time off from work.

71.   Plaintiffs during this time remained in the employer-provided housing for four days.

72.   When Plaintiffs exercised their right under the Job Order to take up to five consecutive days off, Defendant Keith Clute threatened them.

73.   Defendant Keith Clute told Plaintiffs that if they did not work he would report them to federal immigration officials, that they would be deemed by immigration officials to be "illegal," and that Plaintiffs would be forced to return home without pay.

74.   Plaintiffs did not wish to jeopardize their immigration statuses and reasonably believed that the only way they could recover their back wages and avoid adverse immigration consequences was to continue to work for Defendants.

75.   Therefore, Plaintiffs returned to work even though they had not been paid for weeks and had little money, even for food.

76.   Plaintiffs continued to work long weeks without pay through August 2019

77.   In order to further deceive Plaintiffs with an offer of pay, Defendant Keith Clute promised Plaintiffs a "bonus" payment at the end of harvest.

78.   Defendant Keith Clute offered Plaintiffs this payment with intention not to pay.

79.   Plaintiffs' weekly earnings from June 2019 through August 2019 was zero, below the contractually promised wage of $13.26 per hour.

80.   Defendants did not supplement Plaintiffs' weekly earnings to ensure they received the wages required by the FLSA and their employment contracts.

81.   Defendants failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA, 29 C.F.R. § 516.2(a), and by the H-2A regulations, 20 C.F.R. § 655.122(j), and failed to provide Plaintiffs with complete and regular earnings statements containing the information required by the H-2A regulations, 20 C.F.R. § 655.122(k).

### ii. Living Conditions

82.   Defendants housed Plaintiffs in a motel in Kentland, Indiana, that did not have enough beds for Plaintiffs to sleep in.

83.     Plaintiffs were forced to share beds or sleep on the floor.

84.     Defendants were moved to the motel after Defendants initially forced Plaintiffs to sleep on the floor of a refrigerated storage unit.

85.     The motel where Plaintiffs lived did not have adequate kitchen facilities.

86.     Defendants failed to provide Plaintiffs with meals as promised.

87.     Plaintiffs went hungry, had to ration their food and, eventually, had to rely on humanitarian assistance from the Mexican Consulate.

### iii. Threats of Violence, Serious Harm, & Abuse of Law

88.     Further, Defendants threatened or caused Plaintiffs to be threatened with deportation if they left Defendants' employment.

89.     Defendants threatened Plaintiffs saying those who left their employment would also be unable to receive the wages owed to them.

90.     Defendants threatened or caused Plaintiffs to be threatened that those who left employment at Windy Prairie Farm would be unable to return to the United States with another H-2A visa.

91.     Plaintiffs continued to work for Defendants because they feared they would not receive any of the wages owed.

92.     Plaintiffs continued to work for Defendants because they feared being unable to repay the loans they were induced to take, they feared being deported, and they feared being unable to return to the United States with an H-2A visa in the future.

93.     When the USDOL began its investigation of Defendants business operation, Defendant Keith Clute told Plaintiff Kimberly Delgado that he would strangle whoever filed the complaint against him with the USDOL.

94.    Plaintiffs were reasonably placed in fear of their physical safety by the threats from Defendant Keith Clute.

95.    Defendant Keith Clute instructed Plaintiffs to lie to the USDOL about whether he had paid them the wages owed to them.

96.    When Plaintiffs left Defendants' employment, they were owed substantial amounts of back wages and had no financial resources to return to their homes hundreds of miles away from Indiana.

## V.  CLAIMS FOR RELIEF

### COUNT I: TRAFFICKING VICTIMS PROTECTION ACT

97.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs.

98.    Plaintiffs make claims against Defendants for violations of the Trafficking Victims Protection Act, 18 U.S.C. § 1595, for trafficking with respect to involuntary servitude, forced labor, and attempted forced labor.  *See* 18 U.S.C. §§ 1590, 1581, 1584, 1589, and 1594.

99.    Defendants knowingly recruited and obtained Plaintiffs' labor and services.

100.   Defendants recruited and obtained Plaintiffs' labor and services knowing they owed creditors a substantial amount of money.

101.   Defendants recruited and obtained Plaintiffs' labor and services knowing they did not have the resources to pay them.

102.   Defendants recruited and obtained Plaintiffs' labor and services knowing restrictions on the Mexican citizen Plaintiffs' visas meant they could not leave their employment if they stopped paying them.

103.   Defendants knowingly obtained Plaintiffs' labor and services by:

(a)  Serious harm or threats of serious harm;

(b)  Abuse or threatened abuse of law or legal process; and/or

(c)  A scheme intended to cause Plaintiffs to believe that if they did not perform labor or services for Defendants, they would suffer serious harm or physical restraint.

104.  Defendants knowingly induced Plaintiffs to take out loans to pay visa and travel fees to compel Plaintiffs or to attempt to compel Plaintiffs to continue working for Defendants in order to pay off their loans.

105.  Defendants threatened Plaintiffs with serious negative immigration consequences to prevent or to attempt to prevent them from leaving.

106.  Defendants threatened Plaintiffs with serious negative financial consequences as described to prevent or to attempt to prevent them from leaving.

107.  Defendants subjected Plaintiffs to substandard housing conditions and gave them little to no pay so they could not afford to buy food and travel home.

108.  As a result of these acts, Plaintiffs seek compensatory and punitive damages.

## COUNT II:  MIGRANT AND SEASONAL AGRICULTURE WORKER PROTECTION ACT

109.  Plaintiffs incorporate each of the allegations contained in the preceding paragraphs.

110.  Defendants intentionally violated Plaintiff Kimberly Delgado's rights under the Migrant and Seasonal Agriculture Worker Protection Act ("AWPA") by:

(a)  Failing to provide required written disclosures at the time of the worker's recruitment, 29 U.S.C. § 1821(a);

(b)  Failing to post a notice at the place of employment setting forth the worker's rights under the AWPA, 29 U.S.C. § 1821(b);

(c)  Failing to pay wages owed when due, 29 U.S.C. 1822(a);

(d) Violating the terms of the working arrangement without justification, 29 U.S.C. § 1822(c);

(e) Intimidating, threatening, restraining, and discriminating against the worker for exercising her rights as protected under the AWPA, 29 U.S.C. § 1855.

111.   For each such violation of the AWPA, Plaintiff Delgado is entitled to recover actual damages or up to $500 in statutory damages.

## COUNT III: FAIR LABOR STANDARDS ACT

112.   Plaintiffs incorporate each of the allegations contained in the preceding paragraphs.

113.   Defendants failed to pay Plaintiffs at least the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

114.   The violations resulted, in part, from Defendants' failure to pay Plaintiffs for their first week of work.

115.   The violations resulted, in part, from Defendants' failure to reimburse the expenses which Plaintiffs incurred primarily for the benefit of Defendants.  These expenses brought Plaintiffs' earnings below the required minimum hourly wage rate.

116.   The violations set forth in this Count also resulted, in part, from Defendants' failure to compensate Plaintiffs for the time they spent performing agriculture work.

117.   Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA, Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they earned less than the applicable minimum wage.

## COUNT IV: STATE LAW BREACH OF CONTRACT - WAGES

118. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

119. Defendants offered employment to Plaintiffs on the terms and conditions set out in the Job Order.

120. Plaintiffs accepted Defendants' offers.

121. Among the terms Defendants offered and Plaintiffs accepted were promises to:

 (a) Pay the applicable AEWR for each hour worked.

 (b) Pay Plaintiffs biweekly.

 (c) Guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours are not offered.

 (d) Furnish to Plaintiffs on each pay period a written earning statement accurately showing the total earnings for the pay period, hourly rate, hours of employment offered, hours actually worked, itemization of all deductions from wages, the beginning and ending dates of the pay period, and the employer's name, address, and federal employer identification number.

122. Defendants failed to pay Plaintiffs at least the AEWR of $13.26 per hour.

123. Defendants failed to pay Plaintiffs every pay period as required by the contract.

124. Defendants failed to maintain earning records, in violation of 20 C.F.R. § 655.122(j).

125. Defendants failed to furnish to Plaintiffs on each pay period a written earning statement, in violation of 20 C.F.R. § 655.122(k).

126. Defendants therefore breached their employment contracts with Plaintiffs.

127.   As a direct consequence of Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

128.   Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breaches, and Plaintiffs are entitled to damages including unpaid wages.

## COUNT V:  STATE LAW BREACH OF CONTRACT – HOUSING

129.   Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

130.   Defendants offered employment on the terms and conditions set out in the Job Order.

131.   Among the terms Defendants offered and Plaintiffs accepted were promises to:

   (a)  Provide free housing with kitchen facilities that met local, state and federal requirements.

   (b)  Provide meals or adequate kitchen facilities with utensils to allow workers to cook their own meals.

   (c)  Provide, as Defendants' Job Order states, rooms at the Kentland Motel in which each room has "two beds to three beds and a full bathroom plus a fully functioning kitchen area" and in which "[e]ach worker will have their own bed."

132.   Plaintiffs accepted Defendants' offers.

133.   Defendants failed to provide free housing that met local, state, and federal requirements.

134.   Defendants failed to provide Plaintiffs with adequate kitchen facilities or meals.

135.   The violations resulted, in part, from Defendants failure to provide adequate food storage and prepping facilities.

136.   The violations resulted, in part, from Defendants' failure to provide adequate housing.

137.   The violations resulted, in part, from Defendants' failure to provide housing that was not overcrowded.

138.   The violations resulted, in part, from Defendants' failure to provide beds for each worker.

139.   Defendants therefore breached their employment contract with Plaintiffs.

140.   As a direct consequence of Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

141.   Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breaches, and Plaintiffs are entitled to damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court:

A.   Grant judgment against Defendants in favor of each Plaintiff in the amount of their respective unpaid wages as proved at trial plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

B.   Grant judgment against Defendants in favor of each Plaintiff in the amount of each Plaintiff's damages as they arose naturally and according to the usual course of things from such breach and such as the parties contemplated when the contract was made as the probable result of such breach;

C.   Grant judgment against Defendants in favor of each Plaintiff in the amount of their compensatory damages for Defendants' violations of the TVPA as proved at trial, including the promised contractual hourly wage for Plaintiffs' work as well as punitive damages, and damages for the emotional harm that Defendants' TVPA violations caused;

D.      Grant judgement against Defendants in favor of Plaintiff Kimberly Delgado in the amount of her statutory or actual damages pursuant to the AWPA;

E.      Award Plaintiffs' pre-judgment interest and post-judgment interest as allowed by law;

F.      Award Plaintiffs' attorney's fees and the costs of this action; and

G.      Award Plaintiffs all other just and proper relief.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury of all triable issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ David W. Frank
David W. Frank, #31615-02
Neighborhood Christian Legal Clinic, Inc.
347 West Berry Street, Suite 101
Fort Wayne, Indiana 46802
Tel. (260) 456-8972
dfrank@nclegalclinic.org

/s/ Kristin A. Hoffman
Kristin A. Hoffman, #33729-49
Indiana Legal Services, Inc.
Worker Rights and Protection Project
151 North Delaware Street, Suite 1800
Indianapolis, Indiana 46204
Tel. (317) 829-3068
kristin.hoffman@ilsi.net

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 28th day of February 2020, a true and correct copy of the foregoing document was served on Defendants via first class and certified mail, return receipt requested, on the following:

Windy Prairie Farm LLC
c/o Daniel C. Blaney, Esq.
124 East State Street, P.O. Box 500
Morocco, IN 47963

Keith Clute
1112 S. 300 E.
Fowler, IN 47944

Shawn Nower
1112 S. 300 E.
Fowler, IN 47944

/s/ David W. Frank____
Counsel for Plaintiffs

**U.S. Department Labor**
**Employment and Training Administration**

OMB Control No. 1205-0134
Expiration Date: March 31, 2019

### Agricultural and Food Processing Clearance Order ETA Form 790
### Orden de Empleo para Obreros/Trabajadores Agrícolas y Procesamiento de Alimentos

**(Print or type in each field block – To include additional information, go to block # 28 – Please follow Step-By-Step Instructions) (Favor de usar letra de molde en la solicitud – Para incluir información adicional vea el punto # 28 – Favor de seguir las instrucciones paso-a-paso)**

| | |
|---|---|
| **1.** Employer's and/or Agent's Name and Address (Number, Street, City, State and Zip Code / Nombre y Dirección del Empleador/Patrón y/o Agente (Número, Calle, Ciudad, Estado y Código Postal ): | **Nos. 4 through 8 for STATE USE ONLY**<br>**Números 4 a 8 para USO ESTATAL** |

**Windy Prairie Farm LLC**
**c/o Keith Clute**
**1112 S. 300 E**
**Fowler, IN 47944**

a) Federal Employer Identification Number (FEIN) / Número federal de Identificación del Empleador: ▮▮▮▮▮

b) Telephone Number / Número de Teléfono: **765-426-8845**

c) Fax Number / Número de Fax: **N/A**

d) E-mail Address / Dirección de Correo Electrónico:
kclute.wpf@~~xxxxxxxxxxxxxx~~
outlook.com

**4.** SOC (O*NET/OES) Occupational Code / Código Industrial:
45-2092.02

a. SOC (ONET/OES) Occupational Title / Título Ocupacional:
**Farmworkers & Laborers**

**5.** Job Order No. / Num. de Orden de Empleo:
**9128748**

**6.** Address of Order Holding Office (include Telephone number) / Dirección de la Oficina donde se radica la oferta (incluya el número de teléfono):

WorkOne Lafayette: 820 Park East Blvd.
Lafayette, In 47905 (P): 765.474.5411

a. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (Incluya el número de teléfono de su línea directa).

**Employer Services Representative**

**2.** Address and Directions to Work Site / Domicilio y Direcciones al lugar de trabajo: 1112 S. 300 E, Fowler, IN 47944 – From Fowler IN, head west on E. 6th St. toward S. Madison Ave for 482 ft. Turn left onto US-52 E, go 1.1 mile, turn left onto IN-18 E and go 2.2 miles, turn right onto S 300 E and go 1.1 mile. Turn right and the worksite will be after .1 mi on the right.

Windy Prairie Farm LLC owns and operates the worksite.

**7.** Clearance Order Issue Date / Fecha de Emisión de la Orden de Empleo:

**12/10/2018**

**8.** Job Order Expiration Date / Fecha de Vencimiento o Expiración de la Orden de Empleo:

**07/11/2019**

**9.** Anticipated Period of Employment / Período anticipado o previsto de Empleo: From / Desde: 02/20/2019   To / A: 11/30/2019

**10.** Number of Workers Requested / Número de Trabajadores Solicitados:
**9**

**3.** Address and Directions to Housing / Domicilio y Direcciones al lugar de vivienda: 401 N. 7th St., Kentland, IN 47954 – From the worksite, head east toward S. 300 E go .1 mile, turn right onto S 300E and go .4 miles, turn right onto E 150 S and go .6 miles, turn right onto US-52 W and go 7.7 miles, take a slight right onto US-41 N/US-52 W and continue for 8.8 miles, the Kentland Motel will be on the right.

This Motel is leased by Windy Prairie Farm LLC

Description of Housing / Descripción de la vivienda: Housing is at the Kentland Motel, 4 rooms are leased each has two beds to three beds and a full bathroom plus a fully functioning kitchen area. Each worker will have their own bed.

Received ETA 790 12/10/18 JGH

**11.** Anticipated Hours of Work per Week / Horas Anticipadas/Previstas de Trabajo por Semana. Total: 40

Sunday / Domingo_____    Thursday /Jueves 8____
Monday / Lunes  8____    Friday / Viernes ___8____
Tuesday / Martes  8____    Saturday / Sábado _____
Wednesday / Miércoles___8____

**12.** Anticipated range of hours for different seasonal activities: / Rango previsto de horas para las diferentes actividades de la temporada: 7:00 am to 4:00 pm

8 hours per day Monday – Friday,

**13.** Collect Calls Accepted from: / Aceptan Llamadas por Cobrar de:

Employer / Empleador:   Yes / Si_XX__ No_____

REVIEWED   17 pages
By Janet Garcia Hobbs at 7:49 am, Dec 11, 2018

<span style="color:red">**EX. A**</span>

14. Describe how the employer intends to provide either 3 meals a day to each worker or furnish free and convenient cooking and kitchen facilities for workers to prepare meals / Describa cómo el empleador tiene la intención de ofrecer, ya sea 3 comidas al día a cada trabajador, o proporcionar gratuitamente instalaciones para cocinar.

**The employer will furnish free and convenient cooking and kitchen facilities so that workers may prepare their own meals.**

**The employer will also provide (on a regular basis) transportation to assure workers access to Stores where they can purchase groceries.**

15. Referral Instructions and Hiring Information / Instrucciones sobre cómo Referir Candidatos/Solicitantes. (Explain how applicants are to be hired or referred, and the Employer's/Agent's available hour to interview workers / Explique cómo los candidatos serán contratados o referidos, y las horas disponibles del empleador/agente para entrevistar a los trabajadores). See instructions for more details / Vea las instrucciones para más detalles.

Interested workers may contact Keith Clute Monday-Friday 8:00am to 5:00 pm at (765) 426-8845 for a phone interview or by mail at:

**Windy Prairie Farm LLC**
**c/o Keith Clute**
**1112 S. 300 E**
**Fowler, IN 47944**

16. Job description and requirements / Descripción y requisitos del trabajo:

Workers will manually plant, hoe, weed, irrigate, clean, spray, load/unload bins and trucks; till soil and apply fertilizers; transplant, weed thin, prune, cultivate, and harvest field crops; apply pesticides; clean, pack, and load harvested products, post-harvest clean up, may construct trellises, repair fences and farm buildings, and other related activities. Will use hand tools such as shovels, trowels, hoes, tampers, prune hooks, shears, and knives. Employer will train for two working days (16 hours) on this job description. Worker must be able to lift 50 lbs.

Trabajadores se manualmente planta, azada, malas hierbas, regar, limpiar, aerosol, carga y descarga de contenedores y camiones; hasta la tierra y aplicar fertilizantes; trasplante, fino de malas hierbas, podar, cultivar y cosechar cultivos; aplicar plaguicidas; limpio, pack y productos de carga de cosecha, post cosecha limpiar, puede construir pérgolas, reparar cercas y edificios de granja y otras actividades relacionadas. Se utilizan herramientas manuales como palas, paletas, azadas, tampers, ganchos de podar, tijeras y cuchillos. Patrón capacitará durante dos días de trabajo (16 horas) en esta descripción del trabajo. Trabajador debe ser capaz de levantar 50 libras

1. Is previous work experience preferred? / Se prefiere previa experiencia? Yes / Si _____   No _XX_ If yes, number of months preferred: / Si es así, numero de meses de experiencia:  ___0___

2. Check all requirements that apply:

___Certification/License Requirements / Certificación/Licencia Requisitos
___Driver Requirements / Requisitos del conductor
_X__Employer Will Train for 2 days (16 hours) / Empleador entrenará o adiestrará
___ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas
_X_Lifting requirement / Levantar o Cargar __50___ lbs./libras
_X_Repetitive Movements / Movimientos repetitivos
_X__Extensive Sitting / Estar sentado largos ratos

___Criminal Background Check / Verificación de antecedentes penales
___Drug Screen / Detección de Drogas
_X_Extensive Pushing and Pulling / Empujar y Jalar Extensamente
_X_Extensive Walking / Caminar por largos ratos
_X_Frequent Stooping / Inclinándose o agachándose con frecuencia
_X_OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Días Feriados no obligatorio

### 17. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones / Rebaja

| Crop Activities / Cultivos | Hourly Wage / Salario por Hora | Piece Rate / Unit(s) / Pago por Pieza / Unidad(es) | Special Pay (bonus, etc.) / Pagos Especiales (Bono, etc.) | Deductions / Deducciones | Yes/Si | No | Pay Period / Período de Pago / / |
|---|---|---|---|---|---|---|---|
| Jalapeno Peppers | $ 13.26 | $ Per hour | | Social Security / Seguro Social | ☒ | | Weekly / Semanal |
| Bell Peppers | $ 13.26 | Per hour | | Federal Tax / Impuestos Federales | ☒ | | |
| Spinach | $ 13.26 | Per hour | | State Tax /Impuestos Estatales | ☒ | | Bi-weekly/Quincenal |
| Raddishes | 13.26 | Per hour | | Meals / Comidas | | ☒ | |
| | $ | $ Per hour | | Other (specify) / Otro (especifica) | X | | Monthly/Mensual |
| | | | | | | | Other/Otro |

**18. More Details About the Pay / Mas Detalles Sobre el Pago:** Reasonable repair cost of damage, other than that caused by normal wear and tear, may be charged to worker found to have been responsible for damage to housing or furnishings. See Attachment #16

**19. Transportation Arrangements / Arreglos de Transportación:** The employer will reimburse the worker for transportation costs and subsistence to the employer's work site when the worker completes 50% of the work period.

20. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? / ¿Es la práctica habitual usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para este(os) tipo(s) de cosecha(s)?     Yes / Si  _____   No  __XXX__

If you have checked yes, what is the FLC wage for each activity? / Si contesto "Si," cuál es el salario que le paga al Contratista de Trabajo Agrícola por cada actividad?

---

21. Are workers covered for Unemployment Insurance? / ¿Se le proporcionan Seguro de Desempleo a los trabajadores?   Yes/Si _XXX_ No_____

22. Are workers covered by workers' compensation? / ¿Se le provee seguro de compensación/indemnización al trabajador:  Yes/Si _XXX_ No_____

23. Are tools, supplies, and equipment provided at no charge to the workers? / ¿Se les proveen herramientas y equipos sin costo algun o a los trabajadores?

Yes/Si _XXX_  No_____

---

24. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None".) / Enumere todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, i ndique "Ninguno".)
   **N/A**

---

25. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed. (If there are no such incidents, enter "None".) / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (Si no hay incidentes de este tipo, indique "Ninguno".)  **N/A**

27. **Employer's Certification:** This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. / Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se le ofrece, y contiene todos los términos y condiciones materiales ofrecidos.

Keith Clute/Owner
_____
Employer's Printed Name & Title / Nombre y Título en Letra de Molde/Imprenta del Empleador

_____          12/3/18
Employer's Signature / Firma y Título del Empleador          Date / Fecha

**READ CAREFULLY**, In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Employment and Training Administration (ETA) nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the American Job Center constitute a contractual job offer to which the American Job Center, ETA or a State agency is in any way a party.

**LEA CON CUIDADO**, En vista de la función básica del Servicio de Empleo establecida por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, ni ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptado o contratado en el Centro de Carreras (American Job Center) constituyen una oferta de trabajo contractuales a las que el American Job Center, ETA o un organismo estatal es de ninguna manera una de las partes.

**PUBLIC BURDEN STATEMENT**
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (44 USC 3501), is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

**DECLARACION DE CARGA PÚBLICA**
La carga de información pública para responder a la Forma ETA 790, que se requiere para obtener o retener beneficios (44 USC 3501), se estima en aproximadamente 60 minutos por respuesta, incluyendo el tiempo para revisar las instrucciones, buscar fuentes de datos existentes, recopilar y revisar la colección.       público no tiene por qué responder a esta recopilación de información a menos que muestre un número de control OMB válido. Esta información es pública y no hay ninguna expectativa de confidencialidad. Envíe sus comentarios acerca de esta carga o cualquier otro aspecto de esta colección, incluyendo sugerencias para reducir esta carga, al U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

28. Use this section to provide additional supporting information (including section Box number). Include attachments, if necessary. / Utilice esta sección para proporcionar información adicional de apoyo; incluya el número de la sección e incluya archivos adjuntos, si es necesario.

## Disclosure of Work Contract

Windy Prairie Farm LLC, will provide a copy of the work contract to an H-2A worker no later than the time at which the worker applies for the visa or to a worker in corresponding employment no later than on the day work commences, a copy of the work contract between the employer and the worker in language understood by the worker as necessary or reasonable.

**20 CFR 653.501**
**Assurances**

**INTRASTATE AND INTERSTATE CLEARANCE ORDER**

The employer agrees to provide to workers referred through the clearance system the number of hours of work per week cited in Item 11 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO). If the employer fails to notify the OHO at least 10 working days prior to the original date of need, the employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay, or in the absence of a specified hourly rate or pay, the higher of the Federal or State minimum wage rate for the first week starting with the original anticipated date of need. The employer may require workers to perform alternative work if the guarantee is invoked and if such alternative work is stated on the job order.

The employer agrees that no extension of employment beyond the period of employment shown on the job order will relieve the employer from paying the wages already earned, or specified in the job order as a term of employment, providing transportation or paying transportation expenses to the worker's home.

The employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws.

The employer agrees to expeditiously notify the OHO or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

The employer, if acting as a farm labor contractor, has a valid farm labor contractor registration certificate.

The employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested through the clearance system.

The employer also assures that outreach workers shall have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107.


Employer's Name     Keith Clute/ Owner                          Date: 12/3/18

Employer's Signature    _Keith C. Clute_ owner


**Besides the material terms and conditions of the employment, the employer must agree to these assurances if the job order is to be placed as part of the Agricultural Recruitment System. This assurance statement must be signed by the employer, and it must accompany the ETA Form 790.**

# ETA 790 Attachments

for

# Windy Prairie Farm LLC
## c/o Keith Clute
## 1112 S. 300 E
## Fowler, IN 47944
## (765) 426-8845

## ITEM # 2, LOCATION AND DIRECTIONS TO WORK SITE:

### Address and Directions to Worksite:

1112 S. 300 E, Fowler, IN 47944
From Fowler IN, head west on E. 6th St. toward S. Madison Ave for 482 ft. Turn left onto US-52 E, go 1.1 mile, turn left onto IN-18 E and go 2.2 miles, turn right onto S 300 E and go 1.1 mile. Turn right and the worksite will be after .1 mi on the right.
Windy Prairie Farm LLC owns and operates the worksite

## ITEM # 3, LOCATION AND DESCRIPTION OF HOUSING:

### Address and Directions to Housing:

401 N. 7th St., Kentland, IN 47954 – From the worksite, head east toward S. 300 E go .1 mile, turn right onto S 300E and go .4 miles, turn right onto E 150 S and go .6 miles, turn right onto US-52 W and go 7.7 miles, take a slight right onto US-41 N/US-52 W and continue for 8.8 miles, the Kentland Motel will be on the right.

This Motel is leased by Windy Prairie Farm LLC
Housing meets or exceeds all Local, State, DOL and OSHA standards for temporary housing.

Housing will be clean and meet applicable Federal Housing Standards. Workers will be responsible for maintaining housing in a neat, clean manner. Reasonable repair cost of damage, other than that caused by normal wear and tear, may be charged to workers found to have been responsible for damage to housing or furnishing. Housing and utilities are provided at no cost to workers who are unable to return to their place of residence the same day. In the event a female worker is hired, separate toilet, shower, and sleeping rooms will be provided by the employer.

Employer requests conditional access into the Interstate and Intrastate Clearance System and assures that the worker housing will meet the applicable Federal Standards not later than 30 days in advance of the date of need reflected on the attached ETA 790.

Workers may be reached at the following address and phone number:

ADDRESS: 1112 S. 300 E., Fowler, IN 47944

PHONE: (765) 426-8845

## ITEM # 11, ANTICIPATED HOURS OF WORK

**8** hours of work per day is normal.  The worker may be requested but not required to work more hours per day and/or on the Sabbath or Federal holidays

## ITEM # 14, BOARD ARRANGEMENTS: (*check appropriate boxes*)

_____ Employer will provide 3 meals per day and will charge the worker $_____ per day.

X        Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals.

X        Employer will provide (on a regular basis) transportation to assure workers access to stores where they can purchase groceries, if the employer is providing cooking and kitchen facilities.

## ITEM # 15, REFERRAL INSTRUCTIONS: (*Include here who an applicant or State Employment Service Representative should contact concerning employment and how that person may be reached*)

Interested workers may contact Keith Clute Monday-Friday 8:00am to 5:00 pm at (765) 426-8845 for a phone interview or by mail at:

**Windy Prairie Farm LLC**
**c/o Keith Clute**
**1112 S. 300 E**
**Fowler, IN 47944**

## ITEM # 16 JOB SPECIFICATIONS :(*Include here any general crop conditions and work duties not listed on ETA 790, Item #11*)

Workers will manually plant, hoe, weed, irrigate, clean, spray, load/unload bins and trucks; till soil and apply fertilizers; transplant, weed thin, prune, cultivate, and harvest field crops; apply pesticides; clean, pack, and load harvested products, post- harvest clean up, may construct trellises, repair fences and farm buildings, and other related activities.  Will use hand tools such as shovels, trowels, hoes, tampers, prune hooks, shears, and knives.  Employer will train for two working days (16 hours) on this job description.  Worker must be able to lift 50 lbs.

Trabajadores se manualmente planta, azada, malas hierbas, regar, limpiar, aerosol, carga y descarga de contenedores y camiones; hasta la tierra y aplicar fertilizantes; trasplante, fino de malas hierbas, podar, cultivar y cosechar cultivos; aplicar plaguicidas; limpio, pack y productos de carga de cosecha, post cosecha limpiar, puede construir pérgolas, reparar cercas y edificios de granja y otras actividades relacionadas.  Se utilizan herramientas manuales como palas, paletas, azadas, tampers, ganchos de podar, tijeras y cuchillos.  Patrón capacitará durante dos días de trabajo (16 horas) en esta descripción del trabajo.  Trabajador debe ser capaz de levantar 50 libras

The employer will furnish without cost all tools, supplies, or equipment required in the performance of work.

All terms and conditions included in this job order will apply to all workers, domestic and foreign, employed under this job order.

Worker will be expected to meet the following production standards **if applicable**: (*list the production standards for each activity if production standards are applicable*) N/A

**ITEM #17, WAGE RATES, SPECIAL PAY INFORMATION AND DEDUCTIONS:**

The Adverse Effect Wage Rate ("AEWR") of $ <u>13.26</u>, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage, except where a special procedure is approved for an occupation or specific class of agricultural employment, whichever is greatest, will be the minimum rate of pay for all employees. Employer assures that if a change in the AEWR requires an increase in the guaranteed minimum, such increase will be paid as of the effective date of the increase.  If the worker's piece rate earnings for a pay period results in average hourly earnings of less than the guaranteed minimum, the worker will be provided make-up pay to the guaranteed minimum rate.

**This job offer includes the following crop activities and rates of pay per unit:** (*Include all crops and activities not listed on ETA 790, Item #9, along with piece rates and units of measure*)

| Crop Activity | Flat Rate (i.e., hr. wk.) | Piece Rate | Unit | Est. Hourly Equiv. | C/L Wage Rate |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

No deductions will be made which would bring the employee's hourly wage below the Federal Minimum Wage.

The employer will _____ OR will NOT <u>XXX</u> pay the worker a bonus of $_____, based on
_____.

Payroll Periods
Employer guarantees to offer employment for a minimum of 3/4 of the workdays

## OTHER CLARIFICATIONS AND ASSURANCES:

ASSURANCE: The employer agrees to abide by the regulations at 20 CFR 653.501 and 20 CFR 655.135., 20 CFR 653.107

EXTENSION OF EMPLOYMENT: No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned, or if specified in the job order as a term of employment, providing return transportation or paying return transportation expenses to the worker.

TERMS AND CONDITION CHANGES: The employer will expeditiously notify the order holding office or the State agency by telephone immediately upon learning that a crop in maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment.

OUTREACH WORKERS: Outreach workers shall have reasonable access to the worker in the conduction of outreach activities pursuant to 20 CFR 653.501 and 20 CFR 653.107.

CONTRACT IMPOSSIBILITY: The employer will terminate the work contract of any worker whose services are no longer required for due to an ACT of GOD.  In the event of such termination, the employer will be bound by the 3/4's guarantee from the first work day after arrival to the date of termination.  The employer will make efforts to transfer the worker to other comparable employment acceptable to the worker, consistent with existing immigration law as applicable in accordance with 20 CFR 655.122(0)

TERMINATIONS: The employer may terminate the worker with notification to the Employment Service, if the worker: (a) refuses work without justified cause to perform work for which the worker was recruited and hired; (b) commits serious acts of misconduct.

In the event of termination for medical reasons occurring after arrival on the job, or occurring as a result of employment, or in the event of termination resulting from an ACT of GOD, the employer will pay or provide reasonable costs of return transportation and subsistence to the place from which the worker came to work for the employer and reimburse worker for reasonable costs of transportation and subsistence incurred by the worker to get to the place of employment.

EMPLOYER FURNISHED TOOLS AND EQUIPMENT: The employer will furnish, without cost, all tools, supplies, or equipment required in the performance of work.

INJURIES: The employer will provide Workers Compensation Insurance or equivalent employer provided insurance, at no cost to the worker, covering injury and disease arising out of, and in the course of, the worker's employment.  Employer's proof of insurance coverage will be provided to the ETA field office before certification is granted.

PROOF OF CITIZENSHIP: All workers hired under this order will be required to provide documentation attesting to U.S. citizenship or legal status to work in the U.S.

AGRICULTURAL WORK AGREEMENT: A copy of the agricultural work agreement contract or the ETA 790 and attachments will be provided to the worker by the employer no later than on the day work commences.

NUMBER OF WORKERS: The employer expects the total number of workers to be used in this occupation to be **9**, of which **9** will be for which certification is requested. These numbers are only an estimate, as the total workforce needs are dependent upon weather, crop conditions, and worker availability.

OTHER: The working conditions will comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity employer and will offer U.S. workers at least the same opportunities, wages, benefits, and working conditions as those which the employer offers or intends to offer to non-immigrant workers.

All terms and conditions included in this job order will apply to all workers, domestic and foreign, employed under this job order.

# WORK RULES
## for
## Windy Prairie Farm LLC

These work rules are not intended to be a complete list of rules. However, these work rules will help provide guidance to workers concerning standards of conduct expected of them.

Notice is provided that violation of lawful job-related employer requirements, including these work rules, will be considered grounds for termination of the worker's employment. Penalties such as suspension from work opportunity for the remainder of the day, or for up to three days, may be made in the case of less serious violations.

Workers are expected to comply with all rules relating to discipline, attendance, work quality, effort, and the care and maintenance of all property provided to them by the employer.

1. Workers must follow the supervisor's instructions. Insubordination or failure to regard authority will not be tolerated.

2. The employer will not train as they are seeking experienced workers (as specified in item #16, Job Specifications).

3. Workers who do not perform work as per supervisor's instructions may be suspended without pay for the remainder of the work day or for up to (5) days at one time. This is the sole judgment of the supervisor, depending upon the degree and seriousness of the infraction. The worker's prior record and other relevant factors will be considered before any disciplinary action is taken.

4. No use or possession of beer, liquor, unlawful drugs or weapons is permitted during work time or during any work day before work is completed for the day (such as during meals). Workers may not report to work under the influence of alcohol or drugs. Illegal drugs may not be used or kept on any employer premises, including housing. Use or possession of illegal drugs, excessive use of alcohol, will usually result in immediate termination.

5. Employees are expected to be present, able, and willing to perform the assigned work every scheduled work day before work is completed for the day. This is not sporadic or "day work".
Excessive absences will not be tolerated. Excessive absences are considered five (5) consecutive days of un-excused absences or five (5) absences in a 30-day period.

6. Workers shall maintain any living quarters provided to them in a clean and consistent manner.
Workers will cooperate with other workers assigned to such housing and agree to assist in maintaining common kitchen and living areas.

7. Workers living in employer's housing assigned to bunk beds may not separate bunk beds as floor space in sleeping rooms is needed by all occupants.

8. Workers living in employer's housing may not cook in sleeping rooms or any other non-kitchen and living areas.

9. Workers may not drop paper, cans, bottles or other trash in fields, packing house area or on housing premises. Trash and waste receptacles must be used.

10. Workers may not leave the field or other assigned work areas without permission of employer or supervisor.

By filing and interstate clearance order, the employer agrees to abide by the interstate clearance order regulations and makes the following assurances:

1. The employer will provide workers referred through the employer's Clearance Order with a full week of employment for the week beginning with the date of need stated in Item #9 of the Clearance Order, unless the employer amends such date of need at least 10 working days prior, by so notifying the appropriate ES office. The employer will pay workers recruited through this Clearance Order the rate specified in the Clearance Order for the first weeks starting with the original date of need. The employer retains the option, however, of requiring the worker to perform the alternative work specified in the Clearance Order, if the guarantee in this section is invoked.

2. In the event that the period of employment is extended beyond that specified in the Clearance Order, the employer will not be relieved from paying the wage already earned, and from providing transportation or paying transportation expenses as provided in the Clearance Order regulations.

3. The working conditions of this job offer comply with applicable Federal and State minimum wage, child labor, social security, health and safety, migrant and seasonal farm worker and other employment related laws.

4. The employer will expeditiously notify the appropriate ES office by telephone upon learning that his/her crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment being offered by the employer.

5. The employer, if acting as a Farm Labor Contractor (FLC) or Farm Labor Contractor Employer (FLCE) on the order, has a valid FLC certificate or FLCE identification card.

6. The employer will provide housing which meets Federal standards and is sufficient to house the number of workers requested through the Clearance System. The housing will be provided at no cost to the workers who are referred on this order, and when applicable, family members, as provided in Item #3 of the Clearance Order, who are unable to return to their residence on the same day.

7. Employment Service staff (including outreach workers) shall have reasonable access to workers in the conduct of outreach activities.

8. This job order describes the actual terms and conditions of the employment being offered by the employer and contains all the material terms and conditions of the job.

_Kevin C. Cloud_ owner                    12/3/18

SIGNATURE OF EMPLOYER                    DATE

Potential U.S. workers (referrals) will be accepted from the local Job Service Office, through word-of-mouth, gate hires (walk-up workers), and other sources. All applicants should be thoroughly familiarized with the job specifications and terms and conditions of employment on the job order. Only workers meeting all qualifications on the job order should be referred by the Job Service Office. In the event the employer receives phone calls or walk-up workers interested in the job offer, the employer must inform the worker of the job requirements and duties, must consider the worker for the job based on the workers qualifications, and must report the results in the final recruitment report submitted to the U.S. Department of Labor.

The best days and times of day for the local Job Service Office to contact the employer concerning referrals as follows:

_x_M_x_T_x_W_x_TH_x_ F    From _8:00_ am to 11:00 am and From _1:00_ pm to _5:00_ pm
___M___T___W___TH___F    From ___:00 am to ___:00 am and From ___:00 pm to ___:00 pm
___M___T___W___TH___F    From ___:00 am to ___:00 am and From ___:00 pm to ___:00 pm
___M___T___W___TH___F    From ___:00 am to ___:00 am and From ___:00 pm to ___:00 pm

The scheduling of the employer's personal and telephone interviews of referrals will be coordinated by the employer with the local job service office. Personal interviews may be conducted at the local job service office.

<u>ASSURANCE OF RENEWAL OF WORKER'S COMPENSATION COVERAGE
DURING WORK CONTRACT PERIOD</u>

This serves as an assurance that should I receive certification of my H-2A application, I will have a valid worker's compensation insurance policy during the job contract period for any worker I employ under the H-2A program. Additionally, once I purchase my worker's compensation insurance coverage, I will provide to your office the company's name, policy number, and effective dates.

This also serves as an assurance that should my worker's compensation insurance policy expire during the work contract period in which I employ workers under the H-2A program, I will renew my worker's compensation insurance policy to cover the workers.

Additionally, once I do renew the worker's compensation policy, I will provide the company's name, policy number, and effective dates to the Certifying Officer, U.S. Department of Labor, Office of Foreign Labor Certification, Chicago National Processing Center, 11 West Quincy Court, Chicago, IL 60604-2105.

<u>REQUEST FOR CONDITIONAL ACCESS
INTO INTERSTATE CLEARANCE SYSTEM</u>

I, <u>Keith Clute</u>, hereby request permission for conditional entry into the interstate clearance system so that my job order can be transmitted to labor supply states in a timely manner and facilitate the recruitment of domestic workers.

As a condition for placing my order into interstate clearance, I assure that my housing will meet such standards as are agreed upon to fulfill the requirement of the U.S. Secretary of Labor for the use of the Employment Service facilitate for interstate clearance orders.
I also authorize representatives of the State Employment Service, the State Health Department, and/or the U.S. Employment and Training Administration to inspect the housing that I am offering such workers at any reasonable time to verify its condition. I expect my housing to be occupied by <u>02/20/2019</u>. Based upon the above data, my housing will meet applicable standards by <u>01/20/2019</u> 30 days prior to anticipated occupancy date).

_____          _____
SIGNATURE OF EMPLOYER                DATE