**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| ENRIQUE GONZALEZ LEIVA, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:19-CV-87-TLS-JPK |
| | ) | |
| KEITH CLUTE, *et al.*, | ) | |
| Defendants. | ) | |

**FINDINGS, REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Motion for Entry of Default Judgment [DE 44], filed by Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, Jose Albino Leyva, and Kimberly Delgado on June 24, 2020. On August 25, 2020, District Court Judge Theresa L. Springmann entered an Order [DE 45] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court grant the Motion for Entry of Default Judgment [DE 44].

**PROCEDURAL BACKGROUND**

On September 11, 2019, Plaintiffs filed a Complaint against Defendants Keith Clute, Shawn Nower, and Windy Prairie Farm LLC ("Windy Prairie Farm"). (Compl., ECF No. 1). Plaintiffs bring claims of violations of the Trafficking Victims Protection Act, Migrant and Seasonal Agricultural Worker Protection Act, and Fair Labor Standards Act, and breach of contract

under Indiana state law. Plaintiffs allege that Defendants solicitated, recruited, and hired Plaintiffs to perform agricultural work in Benton County, Indiana in 2019 through the federal H-2A temporary worker program. (Am. Compl. ¶ 25, ECF No. 31). However, after arriving in Indiana and performing the contracted work, Plaintiffs allege that Defendants failed to pay certain hourly wages and travel expenses or provide adequate housing and other benefits as agreed. *Id.* at ¶¶ 28-31.

Defendants were served with a copy of the Summons and Complaint by Attorney Emma Hughes via certified mail. (Proof Service, ECF No. 8; Proof Service, ECF No. 9; Proof Service, ECF No. 10). Defendants failed to answer or otherwise respond to the Complaint and have not appeared personally or by a representative. On October 8, 2019, Plaintiffs moved for an Entry of Default pursuant to Federal Rule of Civil Procedure 55(a). (Mot. Entry Default 2019, ECF No. 12). On October 9, 2019, a Clerk's Entry of Default was entered against all Defendants. (Entry Default 2019, ECF No. 13).

On October 9, 2019, Plaintiffs filed a motion for default judgment. (Mot. Default J. 2019, ECF No. 14). On November 6, 2019, Judge Springmann referred the motion to the undersigned Magistrate Judge. (Nov. 6, 2019 Order, ECF No. 15). The Court set this matter for a hearing for February 12, 2020. (Nov. 20, 2019 Order, ECF No. 17).

On February 4, 2020, Plaintiffs filed a brief in support of the motion for default judgment, accompanied by, among other things: (1) Plaintiffs' affidavits; (2) a United States Department of Labor (DOL) job order; and (3) photos of H-2A visas for Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, and Jose Albino Leyva. (Pls.' Br. Mot. Default J. 2019, ECF No. 21).

On February 12, 2020, the Court held a hearing on the motion for default judgment and damages, admitting evidence into the record and hearing argument. Plaintiffs appeared by counsel, with Plaintiffs Kimberly Delgado, Valentin Garcia Arroyo, Gabriel Garcia Arroyo, and Luis Lopez Carrasco additionally appearing via telephone.

On February 26, 2020, Plaintiffs moved to amend the Complaint to correct an attachment. (Mot. Am. Compl., ECF No. 29). The Court granted Plaintiffs' motion and, on February 28, 2020, Plaintiffs filed their First Amended Complaint ("Amended Complaint"). (Am. Compl., ECF No. 31). Because the Amended Complaint superseded the original Complaint, the undersigned issued a Report and Recommendation recommending that Judge Springmann deny as moot Plaintiffs' motion for default judgment. (Mar. 4, 2020 Report & Recommendation, ECF No. 32). On June 16, 2020, Judge Springmann denied the motion for default judgment as moot. (June 16, 2020 Order, ECF No. 38).

Defendants were served with a copy of the Summons and Amended Complaint by Attorney Kristin Hoffman via certified mail. (Proof Service, ECF No. 39; Proof Service, ECF No. 40; Proof Service, ECF No. 41). Defendants have failed to answer or otherwise respond to the Amended Complaint and again have not appeared personally or by a representative. On June 22, 2020, Plaintiffs moved for an Entry of Default pursuant to Rule 55(a). (Mot. Entry Default 2020, ECF No. 42). On June 23, 2020, a Clerk's Entry of Default was entered against all Defendants. (Entry Default 2020, ECF No. 43).

On June 24, 2020, Plaintiffs filed the instant motion for default judgment. (Mot. Default J. 2020, ECF No. 44). On August 25, 2020, Judge Springmann referred the motion to the undersigned Magistrate Judge. (Aug. 25, 2020 Order, ECF No. 45).

## STANDARD OF REVIEW

Default judgment is governed by Federal Rule of Civil Procedure 55. "There are two stages in a default proceeding: the establishment of the default," pursuant to Rule 55(a), "and the actual entry of a default judgment," pursuant to Rule 55(b). *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Rule 55(a) provides that the clerk must enter the default of a party against whom a judgment is sought when that party has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). Because the Clerk of Court entered default against Defendants on June 23, 2020, the Court may enter default judgment under Rule 55(b)(2).

"A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). Although "the well-pled allegations of the complaint relating to liability are taken as true, . . . those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). Accordingly, a plaintiff who has obtained an entry of default must nonetheless prove he is entitled to the damages or other relief he seeks. *In re Catt*, 368 F.3d at 793 ("Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks."); *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) ("Damages must be proved unless they are liquidated or capable of calculation."). "Courts must ascertain with reasonable certainty the proper amount to award as damages to the prevailing party, based upon either an evidentiary hearing or from definite figures contained in documentary evidence or in detailed affidavits." *J & J Sports Prods., Inc. v. Ramos*, No. 2:17-CV-195-TLS, 2019 WL 2206090, at *1 (N.D. Ind. May 22, 2019). Pursuant to Rule 55, the court may "conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting; (B) determine the amount of actual damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

## UNDERLYING FACTS

Because Plaintiffs have obtained an entry of default against Defendants, the Court accepts as true the well-pled allegations of the Amended Complaint relating to liability. *See VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) ("The basic effect of an entry of default . . . is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983))). During the time of the underlying allegations in the Amended Complaint, Defendant Windy Prairie Farm was a limited liability company located in Indiana.[1] (Am. Compl. ¶¶ 10, 13, ECF No. 31). Defendant Windy Prairie Farm was owned and operated by Defendant Clute, while Defendant Nower was an employee and manager of the company. *Id.* at ¶¶ 14, 16. Defendant Windy Prairie Farm itself owned and operated the worksite at which Plaintiffs were employed. *Id.* at p. 21. Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, and Jose Albino Leyva are citizens of Mexico who at all times material were lawfully admitted to the United States on temporary H-2A work visas. *Id.* at ¶ 7. They are indigent and speak and read primarily Spanish. *Id.* at ¶ 44. Plaintiff Kimberly Delgado is a United States citizen, indigent, and bilingual in English and Spanish. *Id.* at ¶ 45.

As explained in Plaintiffs' Amended Complaint, under the federal H-2A temporary worker program, an agricultural employer in the United States may employ temporary foreign workers for certain positions if DOL certifies that (1) "there are not sufficient workers who are able, willing,

---

[1] Defendant Windy Prairie Farm was administratively dissolved and became inactive on March 3, 2019. (Am. Compl. ¶ 13, ECF No. 31).

and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition," and (2) "the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188(a)(1). Employers seeking to hire H-2A foreign agricultural workers must apply for a certification from DOL by filing an Application for Temporary Employment Certification. 20 C.F.R. § 655.130. Unless an exemption applies, this application must include an Agricultural and Food Processing Clearance Order (Form ETA-790) that details the material terms and conditions of employment. 20 C.F.R. §§ 655.121(a)(3), 655.122, 655.130(a). This document is converted to a job order that is posted by the State Workforce Agency on its inter- and intra-state job clearance systems, and functions as the contract for workers employed under the program. 20 C.F.R. § 655.103(b).

A job order must comply with H-2A regulations establishing minimum benefits, wages, and working conditions. 20 C.F.R. §§ 655.121(a)(3), 655.122(c). These regulations include, but are not limited to, the following requirements:

1. If the worker is paid by the hour, the employer must pay the worker at least the [adverse effect wage rate (AEWR)],[2] the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour or portion thereof worked during a pay period. 20 C.F.R. § 655.122(l).

2. If the worker is paid on a piece rate basis and at the end of the pay period the piece rate does not result in average hourly piece rate earnings during the pay period at least equal to the amount the worker would have earned had the worker been paid at the appropriate hourly rate: (i) The worker's pay must be supplemented at that time so that the worker's earnings are at least as much as the worker would have earned during the pay period if the worker had instead

---

[2] The AEWR is "[t]he annual weighted average hourly wage for field and livestock workers (combined) in the States or regions as published annually by the U.S. Department of Agriculture (USDA) based on its quarterly wage survey." 20 C.F.R. § 655.103(b).

been paid at the appropriate hourly wage rate for each hour worked. 20 C.F.R. § 655.122(l)(2)(i).

3. The employer either must provide each worker with three meals a day or must furnish free and convenient cooking and kitchen facilities to the workers that will enable the workers to prepare their own meals. 20 C.F.R. § 655.122(g).

4. The employer must guarantee to offer the worker employment for a total number of work hours equal to at least three-fourths of the workdays of the total period beginning with the first workday after the arrival of the worker at the place of employment or the advertised contractual first date of need, whichever is later, and ending on the expiration date specified in the work contract or in its extensions, if any. 20 C.F.R. § 655.122(i)(1).

5. The employer must provide housing at no cost to the H-2A workers and those workers in corresponding employment who are not reasonably able to return to their residence within the same day. Housing must be provided through one of the following means:

    i.  Employer-provided housing. Employer-provided housing must meet the full set of DOL Occupational Safety and Health Administration (OSHA) standards set forth at 29 CFR 1910.142, or the full set of standards at §§ 654.404 through 654.417 of this chapter, whichever are applicable under § 654.401 of this chapter. Requests by employers whose housing does not meet the applicable standards for conditional access to the interstate clearance system, will be processed under the procedures set forth at § 654.403 of this chapter; or

    ii. Rental and/or public accommodations. Rental or public accommodations or other substantially similar class of habitation must meet local standards for such housing. In the absence of applicable local standards, State standards will apply. In the absence of applicable local or State standards, DOL OSHA standards at 29 CFR 1910.142 will apply. Any charges for rental housing must be paid directly by the employer to the owner or operator of the housing. The employer must document to the satisfaction of the [Certifying Officer] that the housing complies with the local, State, or Federal housing standards. 20 C.F.R. § 655.122(d)(1).

6. The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer (broken out by hours offered both in accordance with and over and above the three-fourths guarantee at paragraph (i)(3) of this section); the hours actually worked each day by the worker; the time the worker began and ended each

workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; the worker's home address; and the amount of and reasons for any and all deductions taken from the worker's wages. 20 C.F.R. § 655.122(j)(1).

7. The employer must furnish to the worker on or before each payday in one or more written statements the following information: (1) The worker's total earnings for the pay period; (2) The worker's hourly rate and/or piece rate of pay; (3) The hours of employment offered to the worker (showing offers in accordance with the three-fourths guarantee as determined in paragraph (i) of this section, separate from any hours offered over and above the guarantee); (4) The hours actually worked by the worker; (5) An itemization of all deductions made from the worker's wages; (6) If piece rates are used, the units produced daily; (7) Beginning and ending dates of the pay period; and (8) The employer's name, address and [Federal Employer Identification Number]. 20 C.F.R. § 655.122(k).

In December 2018, Defendants Windy Prairie Farm and Clute submitted Job Order 9128748 ("Job Order") to the Indiana Department of Workforce Development and an Application for Temporary Employment Certification to DOL. (Am. Compl. ¶ 32, ECF No. 31). The approved Job Order included the following terms and guarantees:

1. Work to begin on February 20, 2019 and continue until November 30, 2019.
2. Anticipated hours of work of at least 40 hours per week.
3. Job duties to include: "manually plant, hoe, weed, irrigate, clean, spray, load/unload bins and trucks; till soil and apply fertilizers; transplant, weed thin, prune, cultivate, and harvest field crops . . . use hand tools such as shovels, trowels, hoes, tampers, prune hooks, shears, and knives. Employer will train for two working days (16 hours) on this job description."
4. An hourly wage of not less than the AEWR, or $13.26 per hour.
5. Bi-weekly pay period.
6. Free housing that meets local, state, and federal requirements including "a full bathroom plus a fully functioning kitchen area . . . Each worker will have their own bed."
7. Guaranteed employment for a total number of work hours equal to at least three fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours were not offered.
8. Assurance that the employer will reimburse the worker for transportation costs and subsistence to the worksite when the worker completes fifty percent of the work period.

*Id.* at ¶ 33, p. 21-24, 29-31.

Defendants recruited Plaintiffs under the terms of this Job Order, and Plaintiffs accepted the offers of employment under those same terms. *Id.* at ¶¶ 38-39. Pursuant to these offers, Plaintiffs traveled to Indiana to perform agricultural work at Defendant Windy Prairie Farm beginning in April 2019. *Id.* at ¶¶ 25, 38, 59-60. As a condition of hire, Defendants required Plaintiffs traveling from Mexico to pay a sum of money to cover visa expenses, hotel and subsistence costs, and travel expenses to get to Indiana. *Id.* at ¶ 54.

Plaintiffs allege that Defendants violated the terms of the Job Order in the following manner. Plaintiffs worked seven days per week and more than sixty hours per week. *Id.* at ¶ 61. Defendants failed to train Plaintiffs, made Plaintiffs perform job duties outside of their contract by requiring them to drive tractors and large machinery, and ceased paying Plaintiffs after the first week of June 2019. *Id.* at ¶¶ 62-64. Plaintiffs were never reimbursed for the money expended to cover visa expenses, hotel and subsistence costs, and travel expenses to get to Indiana as promised. *Id.* at ¶¶ 54, 57.

Defendants also failed to provide the promised housing. *Id.* at ¶¶ 82-87. At one point, Plaintiffs were forced to sleep on the floor of a refrigerated storage unit. *Id.* at ¶ 84. Even after being moved to a motel, Plaintiffs did not have enough beds and were forced to share a bed or sleep on the floor. *Id.* at ¶¶ 82-83. The motel lacked adequate kitchen facilities and Defendants failed to provide Plaintiffs with meals, forcing Plaintiffs to go hungry, ration their food, and eventually rely on humanitarian assistance from the Mexican Consulate. *Id.* at ¶¶ 85-87.

When Plaintiffs expressed concern regarding their need for money for food and other necessities they were met with anger and threats from Defendants. *Id.* at ¶¶ 69, 72. When Plaintiffs attempted to exercise their right under the Job Order to take days off, Defendant Clute threatened to report Plaintiffs to federal immigration officials. *Id.* at ¶¶ 72-73. Defendant Clute further

threatened that Plaintiffs would be deported and forced to return home without pay, and that those who left their employment would both be unable to receive the wages owed to them and be unable to return to the United States with another H-2A visa. *Id.* at ¶¶ 73, 88-90. These threats caused Plaintiffs to fear that they would be unable to repay the loans they were induced to take, that they would be deported, and that they would not receive any of the wages owed. *Id.* at ¶¶ 88-92. Plaintiffs thus continued to work for Defendants. *Id.* at ¶¶ 74-75. Defendant Clute promised Plaintiffs a bonus payment at the end of the harvest to entice Plaintiffs, but he had no intent to actually pay it. *Id.* at ¶¶ 77-78.

After DOL initiated an investigation of Defendants, Defendant Clute told Plaintiff Delgado that he would strangle the individual who filed the complaint against him. *Id.* at ¶ 93. This caused Plaintiffs to reasonably be placed in fear of their physical safety. *Id* at ¶ 94.

In the end, Plaintiffs received no payment for their work from the first week of June 2019 through August 2019. *Id.* at ¶¶ 64, 79. By the time they left Defendants' employment, Plaintiffs were owed a substantial amount of back wages and had no financial resources to return to their homes in Florida and Mexico. *Id.* at ¶ 96.

## ANALYSIS

Plaintiffs' Amended Complaint raises five claims against Defendants: Count I alleges a violation of the Trafficking Victims Protection Act; Count II alleges a violation of the Migrant and Seasonal Agricultural Worker Protection Act; Count III alleges a violation of the Fair Labor Standards Act; and Counts IV and V allege a breach of contract under Indiana state law.

## A. Count I: Trafficking Victims Protection Act

Count I of Plaintiffs' Amended Complaint alleges a violation of the Trafficking Victims Protection Act (TVPA), pursuant to 18 U.S.C. § 1595, for trafficking with respect to forced labor.[3] (Am. Compl. ¶ 98, ECF No. 31). Pursuant to the TVPA, a victim may bring a civil action for damages and attorney's fees against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a).

Under section 1589, a claim for forced labor may be pursued against an individual who "knowingly provides or obtains the labor or services of a person" by any of the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a). This section defines "serious harm" as

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2). Further, this section encompasses both overt physical coercion and nonphysical forms of coercion. *United States v. Calimlim*, 538 F.3d 706, 714 (7th Cir. 2008) ("Section 1589 is not written in terms limited to overt physical coercion, and we know that when Congress amended the statute it expanded the definition of involuntary servitude to include

---

[3] As explained at the February 12, 2020 hearing and in Plaintiffs' brief in support of the motion for default judgment, Plaintiffs are no longer pursuing claims for violations of the TVPA under 18 U.S.C. §§ 1590, 1581, 1584, and 1594. (Pls.' Br. Mot. Default J. 2020 at 14 n. 1, ECF No. 49).

nonphysical forms of coercion."). Section 1589 defines "abuse or threatened abuse of law or legal process" as:

> the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

18 U.S.C. § 1589(c)(1). The Seventh Circuit Court of Appeals has held that the threat of harm under immigration laws constitutes an abuse of the legal process under this section. *Calimlim*, 538 F.3d at 713 ("But the immigration laws do not aim to help employers retain secret employees by threats of deportation, and so [the defendants'] 'warnings' about the consequences were directed to an end different from those envisioned by the law and were thus an abuse of the legal process . . . The warnings therefore fit within the scope of § 1589[(a)](3)." (citation omitted)); *See Mouloki v. Epee*, 262 F. Supp. 3d 684, 697 (N.D. Ill. 2017) ("Other courts have found that threats of deportation 'can constitute serious harm to an immigrant within the meaning of the forced labor statute,' or even alone can create a disputed issue of material fact about whether defendants abused the law or legal process or engaged in a scheme to mislead a [TVPA] claimant.").

The Court finds that the Amended Complaint adequately pleads that Defendants violated the TVPA, pursuant to 18 U.S.C. § 1595. Defendants recruited Plaintiffs by submitting a Job Order to the Indiana Department of Workforce Development and an Application for Temporary Employment Certification to DOL for temporary foreign agricultural workers to be employed through the H-2A temporary foreign agricultural worker program during the 2019 planting and harvesting season at Defendant Windy Prairie Farm. (Am. Compl. ¶¶ 25, 32-37, ECF No. 31). Through this recruitment, Defendants induced Plaintiffs to travel to Indiana to perform the contracted work, where Plaintiffs were dependent on Defendants for wages, meals, shelter, and the basic necessities of life. *Id.* at ¶¶ 25, 32-37, 47-49.

12

Despite the terms and guarantees of the Job Order, Defendants withheld wages, resulting in Plaintiffs working without pay from June 2019 to August 2019. *Id.* at ¶¶ 64-68, 76-79. To induce Plaintiffs to stay and continue working, Defendants promised future payments with no intent to pay. *Id.* at ¶¶ 67, 77-78. When Plaintiffs attempted to exercise their right under the Job Order to take days off, Defendant Clute threatened that he would report Plaintiffs to immigration officials, resulting in Plaintiffs being deemed "illegal" and forced to return home without pay. *Id.* at ¶¶ 72-73. Plaintiffs reasonably believed that the only way they could recover their back wages and avoid adverse immigration consequences was to continue working for Defendants. *Id.* at ¶ 74. When DOL began an investigation of Defendants, Defendant Clute told Plaintiff Delgado that he would strangle the individual who filed the complaint against him. *Id.* at ¶ 93.

Plaintiffs have sufficiently alleged that Defendants knowingly obtained Plaintiffs' labor and services by threats of force, serious harm, and abuse of law or legal process, as well as by a scheme or plan intended to cause Plaintiffs to believe that they would suffer serious harm if they did not perform the contracted labor and services, all as defined in 18 U.S.C. § 1589. Defendants' withholding of wages, threats to withhold wages, and threat of physical violence were sufficiently serious to compel a reasonable person to continue performing the contracted labor and services in order to avoid incurring the threatened harm. As such, these actions constituted threats of force and serious harm under section 1589(a)(1)-(2). Further, Defendant Clute's threats of adverse immigration consequences constituted a threat of abuse of law or legal process under section 1589(a)(3). *See Calimlim*, 538 F.3d at 713. Finally, Defendants' scheme—inducing Plaintiffs to travel to Indiana to perform the contracted work and threatening them with force, serious harm, and abuse of law or legal process when Plaintiffs sought what was promised in the Job Order—constituted a scheme, plan, or pattern intended to cause Plaintiffs to believe that, if

13

they did not perform such labor or services, Plaintiffs would suffer serious harm under section 1589(a)(4). Accordingly, Plaintiffs have adequately alleged that Defendants violated the TVPA, pursuant to 18 U.S.C. § 1595, for trafficking with respect to forced labor.

### B.  Count II: Migrant and Seasonal Agricultural Worker Protection Act

Count II of Plaintiffs' Amended Complaint alleges a violation of Plaintiff Kimberly Delgado's rights under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), pursuant to 29 U.S.C. § 1854. Under the AWPA, a migrant agricultural worker may pursue a claim against "a farm labor contractor, agricultural employer, agricultural association, or other person" for a violation of the act. 29 U.S.C. § 1854(a). Upon finding an intentional violation of the AWPA, a court "may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, or other equitable relief," with the exception that "multiple infractions of a single provision of this chapter or of regulations under this chapter shall constitute only one violation for purposes of determining the amount of statutory damages due a plaintiff." 29 U.S.C. § 1854(c)(1)(A). In ruling on the predecessor of the AWPA,[4] the Seventh Circuit Court of Appeals explained that "the term 'intentionally' . . . 'means conscious or deliberate and does not require a specific intent to violate the law.'" *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 238 (7th Cir. 1983) (quoting *Alvarez v. Joan of Arc, Inc.*, 658 F.2d 1217, 1224 (7th Cir. 1981)).

An "agricultural employer" is defined as "any person who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery, or who produces or conditions seed, and who either recruits, solicits, hires, employs, furnishes, or transports any migrant or

---

[4] The Farm Labor Contractor Registration Act preceded the AWPA. *Martinez v. Mendoza*, 595 F. Supp. 2d 923, 927 (N.D. Ind. 2009).

seasonal agricultural worker." 29 U.S.C. § 1802(2). The AWPA defines "person" as "any individual, partnership, association, joint stock company, trust, cooperative, or corporation." 29 U.S.C. § 1802(9). Further, "agricultural employment" is defined as:

> employment in any service or activity included within the provisions of section 3(f) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(f)), or section 3121(g) of Title 26 and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state.

29 U.S.C. § 1802(3). Finally, a "migrant agricultural worker" is defined as "an individual who is employed in agricultural employment of a seasonal or other temporary nature, and who is required to be absent overnight from his permanent place of residence."[5] 29 U.S.C. § 1802(8)(A).

The AWPA provides numerous protections for migrant agricultural workers. An agricultural employer is required to provide certain written disclosures concerning the nature of employment, post a notice of employment rights and protections, and post housing related disclosures. 29 U.S.C. § 1821(a)-(c). Such an employer is further required to pay wages when due and may not violate the terms of any working arrangement without justification. 29 U.S.C. § 1822(a), (c). The AWPA further prohibits the intimidation, discrimination, or threatening of a migrant agricultural worker in retaliation for the filing of a complaint or exercise of his or her rights under the act. 29 U.S.C. § 1855(a).

The Court finds that the Amended Complaint adequately pleads that Defendants intentionally violated the AWPA, pursuant to 29 U.S.C. § 1854, with respect to Plaintiff Delgado.[6] Accepting the well-pled allegations of the Amended Complaint as true, Defendants were

---

[5] This definition excludes "any temporary nonimmigrant alien who is authorized to work in agricultural employment in the United States" under 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c). 29 U.S.C. § 1802(8)(B)(ii).

[6] Count II of the Amended Complaint refers broadly to Defendants in the plural. However, and as explained further in the below section regarding joint and several liability, the record reflects that Defendants Windy Prairie Farm and Clute are responsible for one AWPA violation, that Defendant Clute alone is responsible for one AWPA violation, and that all Defendants are responsible for the remaining three AWPA violations.

"agricultural employers" against whom Plaintiff Delgado, as a "migrant agricultural worker," may pursue a claim pursuant to 29 U.S.C. § 1854(a). Defendant Clute owned and operated Defendant Windy Prairie Farm, where Defendant Nower was an employee and manager. (Am. Compl. ¶¶ 14, 16, ECF No. 31). Defendant Windy Prairie Farm itself owned and operated the worksite at which Plaintiff Delgado was employed. *Id.* at p. 21. Defendants recruited, hired, and employed Plaintiff Delgado to travel from her permanent place of residence to work at Defendant Windy Prairie Farm, where she performed tasks including picking plants. *Id.* at ¶¶ 8, 25, 27, 46, 59; Hr'g Tr. 7:7-12, ECF No. 50. The work performed by Plaintiff Delgado thus falls within the definition of "agricultural employment" as defined in 29 U.S.C. § 1802(3) and, consequently, Plaintiff Delgado was a "migrant agricultural worker" as defined in 29 U.S.C. § 1802(8)(A). Defendants were thus "agricultural employers" as defined in 29 U.S.C. § 1802(2).

The Amended Complaint provides numerous allegations regarding Defendants' conduct in violation of the AWPA. Defendants failed to provide written disclosures at the time of Plaintiff Delgado's recruitment and further failed to post and notify Plaintiff Delgado of her employment rights, as required by 29 U.S.C. § 1821(a)-(b). (Am. Compl. ¶ 110, ECF No. 31). In the context of Defendants' other conduct, including their refusal to pay owed wages and threats to Plaintiffs, the Amended Complaint adequately establishes that Defendants' failure to provide written disclosures and post and notify Plaintiff Delgado of her employment rights was deliberate and intentional. Defendants further failed to provide wages when due to Plaintiff Delgado for work completed in June 2019 to August 2019, as required by 29 U.S.C. § 1822(a). *Id.* at ¶¶ 64-68, 76-79. The allegations that Defendants failed to provide these wages when confronted about the issue of nonpayment and that Defendants offered a bonus payment to induce Plaintiffs to continue working, with no intention of actually paying it, adequately establish that the failure to pay wages when due

16

was an intentional act. Defendants violated the terms of their work arrangement without justification, in contravention of 29 U.S.C. § 1822(c), by failing to, *inter alia*: reimburse travel expenses, provide adequate housing, and provide adequate kitchen facilities and meals as promised. *Id.* at ¶¶ 28, 31, 69, 72, 80-87; Hr'g Tr. 14:18-21, ECF No. 50. Defendants further failed to train Plaintiff Delgado as promised in the Job Order and forced her to perform job duties outside of the contract, such as transporting the other Plaintiffs to and from work each day. (Am. Compl. ¶¶ 62-63, ECF No. 31; Pls.' Br. Mot. Default J. 2019 Ex. 1 ¶¶ 24-25, p. 52, ECF No. 21-1). Defendants' agreement to these terms and anger when confronted with their failure to abide by them establishes that this conduct was intentional. Finally, Defendants threatened Plaintiffs that those who left their employment would be unable to receive the wages owed to them and, further, Defendant Clute told Plaintiff Delgado that he would strangle whoever filed the complaint against him with DOL, placing her and the other Plaintiffs in fear of their physical safety, all in violation of 29 U.S.C. § 1855(a).[7] (Am. Compl. ¶¶ 89, 91, 93-94, ECF No. 31). The allegations in the Amended Complaint clearly establish that this threatening conduct was both overt and intentional. With these allegations, Plaintiff Delgado has sufficiently pleaded her claims against Defendants for intentional violations of the AWPA, pursuant to 29 U.S.C. § 1854.

### C. Count III: Fair Labor Standards Act

Count III of Plaintiffs' Amended Complaint alleges a violation of the Fair Labor Standards Act (FLSA), pursuant to 29 U.S.C. §§ 201-219. Under the FLSA, an employee deprived of minimum wages required by the act may pursue a cause of action against an employer who fails

---

[7] In their brief in support of the motion for default judgment, Plaintiffs state that Defendants further failed to make mandatory housing disclosures as required by 29 U.S.C. § 1821(c). (Pls.' Br. Mot. Default J. 2020 at 20, ECF No. 49). However, the Court can find no allegation in the Amended Complaint regarding Defendants' failure to provide housing disclosures.

to provide wages at the federal minimum rate of $7.25 per hour. 29 U.S.C. §§ 206(a), 216(b). In such an action, the employee may also recover attorney's fees and costs. 29 U.S.C. § 216(b).

The FLSA defines an "employee" as "any individual employed by an employer" and an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d)-(e)(1). "To employ" is further defined as "to suffer or permit to work." 29 U.S.C. § 203(g). The Seventh Circuit Court of Appeals has interpreted the definition of "employer" to include a "supervisor who uses his authority over the employees whom he supervises to violate their rights under the FLSA." *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001). Further, "[t]he FLSA will apply to a defendant if he or she possesses control over the aspect of employment alleged to have been violated even if the defendant does not exercise control over the day-to-day affairs of the employer." *Natal v. Medistar, Inc.*, 221 F. Supp. 3d 999, 1003 (N.D. Ill. 2016). Finally, to state a claim for a minimum wage violation under the FLSA, a plaintiff "must provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was underpaid." *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018).

Plaintiffs have adequately pleaded that Defendants violated the FLSA, pursuant to 29 U.S.C. §§ 201-219. First, accepting the well-pled allegations in the Amended Complaint as true, Plaintiffs were employed by Defendants as defined in the FLSA. (Am. Compl. ¶¶ 6-16, 25, 32-37, 40-41, 43, 47-61, ECF No. 31). Defendants Clute and Nower exercised authority and control over Plaintiffs, who Defendants employed to work at Defendant Windy Prairie Farm. *Id.* Second, the Amended Complaint alleges that Plaintiffs were paid nothing after the first week of June 2019 through August 2019, which necessarily falls below the federal minimum rate of $7.25 per hour. *Id.* at ¶¶ 64-68, 76-79. The affidavits provided to the Court with Plaintiffs' brief in

support of their previous motion for default judgment, which the Court incorporates herein, further support this allegation and detail the number of hours for which Plaintiffs worked and did not receive pay.[8] (*See* Pls.' Br. Mot. Default J. 2019 Ex. 1, ECF No. 21-1). Accordingly, Plaintiffs have adequately pleaded violations of the FLSA, pursuant to 29 U.S.C. §§ 201-219, and are entitled to obtain damages from Defendants for these violations.

### D.  Counts IV and V: Breach of Contract

Counts IV and V of Plaintiffs' Amended Complaint allege a breach of contract in the provision of wages and housing in violation of Indiana law.

*1. Wages*

"Indiana law recognizes two basic forms of employment: (1) employment for a definite or ascertainable term; and (2) employment-at-will." *Michael v. St. Joseph Cty.*, 259 F.3d 842, 847 (7th Cir. 2001) (citing *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997)). "For those falling in the former category, 'the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement.'" *Remmers v. Remington Hotel Corp.*, 56 F. Supp. 2d 1046, 1052 (S.D. Ind. 1999) (quoting *Orr*, 689 N.E.2d at 717). "If such a contract is terminated earlier and without cause, the employer will incur liability for breach of contract." *Id.* (citing *Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1192 (Ind. 1989)). Finally, Indiana law requires that "[e]very person, firm, corporation, limited liability company, or association . . . pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." Ind. Code § 22-2-5-1.

"In Indiana, there is a strong presumption that employment is at-will." *Butts v. Oce-USA, Inc.*, 9 F. Supp. 2d 1007, 1010 (S.D. Ind. 1998). For employment to be considered for a definite or

---

[8] Courts "may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from prior proceedings in the case." *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

ascertainable term, an employment contract must contain four elements: "1) it must state the place of employment; 2) it must state the period of employment; 3) it must state the nature of the services the employee is to render; and 4) it must state the compensation the employee was to receive." *Id.* at 1011 (citing *Majd Pour v. Basic American Medical, Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987)).

The Court finds that the Amended Complaint adequately pleads that Defendant Windy Prairie Farm breached the parties' contractual agreement in violation of Indiana law regarding the provision of wages.[9] First, Plaintiffs allegations support a finding that their employment was for a definite or ascertainable term, rather than at-will. Pursuant to 20 C.F.R. § 655.103, a job order submitted with a temporary employment certification application with DOL's Employment and Training Administration functions as a contract for workers employed under the H-2A program. 20 C.F.R. § 655.103(b). The Job Order in this matter, representing the contractual agreement of the parties, contains the four elements enumerated in *Butts*: 1) the place of employment is stated as 1112 S. 300 E, Fowler, IN 47944; 2) the period of employment is stated as February 20, 2019 to November 30, 2019; 3) the nature of the services Plaintiffs were to render is stated as:

> manually plant, hoe, weed, irrigate, clean, spray, load/unload bins and trucks; till soil and apply fertilizers; transplant, weed thin, prune, cultivate, and harvest field crops; apply pesticides; clean, pack, and load harvested products, post-harvest clean up, may construct trellises, repair fences and farm buildings, and other related activities. Will use hand tools such as shovels, trowels, hoes, tampers, prune hooks, shears, and knives. Employer will train for two working days (16 hours) on this job description. Worker must be able to lift 50 lbs[; and]

---

[9] Counts IV and V of the Amended Complaint refer broadly to Defendants in the plural and do not specifically refer to Defendant Windy Prairie Farm as the party liable for breach of contract. However, and as explained further in the below section regarding joint and several liability, the Job Order reflects a contractual relationship between Plaintiffs and Defendant Windy Prairie Farm, which is the sole entity listed as Plaintiffs' employer in the contract. Defendant Nower does not appear on the Job Order, and Defendant Clute appears only in his capacity to sign on behalf of Defendant Windy Prairie Farm. As such, Defendant Windy Prairie Farm alone is liable for any alleged breach of contract.

4) the compensation Plaintiffs were to receive is stated as $13.26 per hour. (Am. Compl. p. 21, 23, 24, 31, ECF No. 31). Pursuant to the terms of the Job Order, Plaintiffs' employment with Defendant Windy Prairie Farm was for a definite or ascertainable term.

Because Plaintiffs' employment was for a definite or ascertainable term, Defendant Windy Prairie Farm could not terminate the employment relationship except for cause or by mutual agreement. *See Remmers*, 56 F. Supp. 2d at 1052. On the allegations in the Amended Complaint, it appears that no such cause or mutual agreement existed. Further, Plaintiffs allege that Defendants failed to pay Plaintiffs any wages after the first week of June 2019 through August 2019. (Am. Compl. ¶¶ 64-68, 76-79, ECF No. 31). Accordingly, Plaintiffs have adequately pleaded that Defendant Windy Prairie Farm breached the parties' contractual agreement regarding the provision of wages in violation of Indiana law.

*2. Housing*

"To prevail on a breach of contract claim, a plaintiff 'must prove the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach.'" *Collins v. Univ. of Notre Dame Du Lac*, 929 F.3d 830, 839 (7th Cir. 2019) (quoting *Haegert v. University of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012)).

The Court finds that the Amended Complaint adequately pleads that Defendant Windy Prairie Farm breached the parties' contractual agreement in violation of Indiana law regarding the provision of housing. As noted above, the Job Order in this matter represents the parties' contractual agreement. Under the terms of the Job Order, Defendant Windy Prairie Farm was to provide "free and convenient cooking and kitchen facilities so that workers may prepare their own meals" and housing with "two beds to three beds [per room] and a full bathroom plus a fully

functioning kitchen area." (Am. Compl. p. 21, 22, 30 ECF No. 31). Defendant Windy Prairie Farm was further to provide each Plaintiff with their own bed. *Id.* at 21.

Plaintiffs assert that, despite this agreement, they were forced to live in unhealthful and squalid conditions during their time of labor. (Pls.' Br. Mot. Default J. 2020 at 25, ECF No. 49). The Amended Complaint alleges that Defendants initially forced Plaintiffs to sleep on the floor of a refrigerated storage unit. (Am. Compl. ¶ 84, ECF No. 31). Defendants later moved Plaintiffs to a motel, where Plaintiffs were forced to share beds or sleep on the floor. *Id.* at ¶¶ 82-84. Further, the motel did not have adequate kitchen facilities, and Defendants failed to provide meals as promised. *Id.* at ¶¶ 85-86. Consequently, Plaintiffs went hungry, had to ration food, and eventually had to rely on humanitarian assistance from the Mexican Consulate. *Id.* at ¶ 87.

Defendant Windy Prairie Farm's failure to provide the housing promised in the Job Order constitutes a breach of the parties' contractual agreement. Accordingly, Plaintiffs have adequately pleaded that Defendant Windy Prairie Farm breached the parties' contractual agreement regarding the provision of housing in violation of Indiana law.

### E. Damages

*1. Compensatory Damages – Economic Harm*

Plaintiffs seek compensatory damages in restitution under the TVPA and in lost wages under the FLSA and Indiana law for the economic harm they suffered. (Pls.' Br. Mot. Default J. 2020 at 26, ECF No. 49).

Pursuant to the TVPA, restitution requires compensation for the value of the services rendered. 18 U.S.C. § 1593(b)(3). Under the FLSA, in turn, "[a]ny employer who violates the provisions of section 206 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages."

29 U.S.C. § 216(b). Finally, per Indiana law, wages must be paid as provided under the relevant contract, at the minimum wage or greater, and in a timely manner. Ind. Code §§ 22-2-2-4(c), 22-2-5-1.

"In cases where the employer keeps time records that comply with the FLSA, 'the accurate time records will establish the amount of damages, and the general rule that precludes recovery of uncertain and speculative damages is appropriate.'" *Brand v. Comcast Corp.*, 135 F. Supp. 3d 713, 741 (N.D. Ill. 2015) (quoting *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008). However, "where the employer's records are not trustworthy, the employee can meet his burden of showing damages by proving 'that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005)).

For breach of contract under Indiana law, "a plaintiff is limited to recovering only the losses actually suffered from the breach, and an injured party may not be placed in a better position than he would have enjoyed if the breach had not occurred." *Shepard v. State Auto. Mut. Ins. Co.*, 463 F.3d 742, 745 (7th Cir. 2006) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind. Ct. App. 1993)). "Moreover, damages cannot be based on mere speculation and conjecture. Rather, a plaintiff must have adequate evidence to allow a jury to determine with sufficient certainty that damages in fact occurred, and, if so, to quantify such damages with some degree of precision." *Id.*

Plaintiffs have provided the Court with a calculation of their economic damages, which include pre-employment expenses, AEWR wages, and employer-related costs. (Pls.' Br. Mot.

Default J. 2020 Ex. A, ECF No. 49-1). For all nine Plaintiffs, these damages amount to $84,337.65.[10] *Id.* Per Plaintiffs' affidavits, this number was arrived at as follows:

1. Plaintiff Jose Albino Leyva: $8,959.27 in unpaid wages and $756.00 for travel expenses and employer-related costs ($9,715.27 total);[11]

2. Plaintiff Rogelio Corona Trejo: $8,959.27 in unpaid wages and $797.00 for travel expenses and employer-related costs ($9,756.27 total);

3. Plaintiff Gabriel Garcia Arroyo: $8,534.95 in unpaid wages and $913.00 for travel expenses and employer-related costs ($9,447.95 total);

4. Plaintiff Valentin Garcia Arroyo: $8,534.95 in unpaid wages and $913.00 for travel expenses and employer-related costs ($9,447.95 total);

5. Plaintiff Simon Gonzalez Hernandez: $8,959.27 in unpaid wages and $756.00 for travel expenses and employer-related costs ($9,715.27 total);

6. Plaintiff Enrique Gonzalez Leiva: $8,959.27 in unpaid wages and $756.00 for travel expenses and employer-related costs ($9,715.27 total);

7. Plaintiff Raul Gonzalez Leyva: $8,959.27 in unpaid wages and $756.00 for travel expenses and employer-related costs ($9,715.27 total);

---

[10] Plaintiffs' brief states that they are owed a total of $84,205.02 in economic damages. (Pls.' Br. Mot. Default J. 2020 at 27, ECF No. 49; Pls.' Br. Mot. Default J. 2020 Ex. A, ECF No. 49-1). However, and as noted below, both the affidavits provided by certain Plaintiffs and Plaintiffs' brief seem to undercalculate the amount owed to them, based on the amount paid and total number of hours worked as stated in the affidavits. The Court has corrected these discrete amounts and the total amount owed to Plaintiffs in economic damages accordingly.

[11] The affidavits submitted by Plaintiffs Jose Albino Leyva, Rogelio Corona Trejo, Simon Gonzalez Hernandez, Enrique Gonzalez Leiva, and Raul Gonzalez Leyva state that they are each owed $8,932.75 in unpaid wages. (Pls.' Br. Mot. Default J. 2019 Ex. 1 ¶ 39, p. 3; ¶ 39, p. 8; ¶ 39, p. 29; ¶ 39, p. 42; ¶ 39, p. 47, ECF No. 21-1). However, the affidavits further state that they worked 977.17 hours and were paid only $3,998.00. *Id.* at ¶ 41, p. 3; ¶ 41, p. 8; ¶ 41, p. 29; ¶ 41, p. 42; ¶ 41, p. 47. Per the contracted rate of $13.26 per hour, these Plaintiffs were compensated for only 301.508296 hours. Accordingly, they are owed $8,959.27 for the remaining 675.661704 hours of work at $13.26 per hour.

8.  Plaintiff Luis Lopez Carrasco: $8,534.95 in unpaid wages and $929.00 for travel expenses and employer-related costs ($9,463.95 total);

9.  Plaintiff Kimberly Delgado: $4,500.00 in unpaid wages and $2,860.42 for travel expenses and employer-related costs ($7,360.42 total).[12]

(Pls.' Br. Mot. Default J. 2019 Ex. 1 ¶¶ 39-41, p. 3; ¶¶39-41, p. 8; ¶¶ 47-49, p. 14-15; ¶¶ 44-46, p. 22; ¶¶ 39-41, p. 29; ¶¶ 45-47, p. 35; ¶¶ 39-41, p. 42; ¶¶ 39-41, p. 47; ¶¶ 58-60, p. 53, ECF No. 21-1.).

The allegations in the Amended Complaint, affidavits provided by Plaintiffs detailing the number of hours they worked and the payment received, and testimony provided by Plaintiffs Kimberly Delgado, Valentin Garcia Arroyo, Gabriel Garcia Arroyo, and Luis Lopez Carrasco adequately establish that Plaintiffs performed the work for which they were improperly compensated and are sufficient to show the amount and extent of the work as a matter of just and reasonable inference. *See Brand*, 135 F. Supp. 3d at 741. Accordingly, the Court finds that Plaintiffs are entitled to economic damages for Defendants' violations of the TVPA, FLSA, and Indiana law in the amount of $84,337.65.

Plaintiffs request an additional $52,196.76 in liquidated damages. (Pls.' Br. Mot. Default J. 2020 at 32, ECF No. 49; Pls.' Br. Mot. Default J. 2020 Ex. A, ECF No. 49-1). As noted above, the FLSA allows for the recovery of liquidated damages in an amount equal to the amount of the employees' unpaid minimum wages. 29 U.S.C. § 216(b). Accordingly, the Court finds that Plaintiffs are entitled to an additional $52,196.76[13] in liquidated damages, to be distributed to

---

[12] Plaintiff Delgado's affidavit explains that she contracted with Defendants for a wage of $450.00 per week and was unpaid for ten weeks of her employment. (Pls.' Br. Mot. Default J. 2019 Ex. 1 ¶ 23, p. 52; ¶ 58, p. 53, ECF No. 21-1).

[13] The Court notes that the record supports the recovery of liquidated damages equal or greater to the amount sought by Plaintiffs. In this matter, excluding Plaintiffs' travel expenses, Plaintiffs' unpaid minimum wages total $74,901.23. Per the FLSA liquidated damages provision, Plaintiffs are entitled to recover this full amount. Nonetheless, as Plaintiffs have not requested this amount, the Court recommends an award of the $52,196.76 sought by Plaintiffs.

individual Plaintiffs per the amount listed in Exhibit A to Plaintiffs' brief in support of the motion for default judgment:

1. Plaintiff Jose Albino Leyva: $6,143.97;

2. Plaintiff Rogelio Corona Trejo: $6,143.97;

3. Plaintiff Gabriel Garcia Arroyo: $5,708.97;

4. Plaintiff Valentin Garcia Arroyo: $5,708.97;

5. Plaintiff Simon Gonzalez Hernandez: $6,143.97;

6. Plaintiff Enrique Gonzalez Leiva: $6,143.97;

7. Plaintiff Raul Gonzalez Leyva: $6,143.97;

8. Plaintiff Luis Lopez Carrasco: $5,708.97;

9. Plaintiff Kimberly Delgado: $4,350.00.

(Pls.' Br. Mot. Default J. 2020 Ex. A, ECF No. 49-1).

*2. Compensatory Damages – Emotional Distress*

Plaintiffs seek compensatory damages under the TVPA for the emotional distress they suffered due to Defendants' violative conduct. (Pls.' Br. Mot. Default J. 2020 at 27, ECF No. 49).

Neither the United States Supreme Court, the Seventh Circuit Court of Appeals, nor any district court in this jurisdiction seem to have previously addressed the issue of awarding emotional distress damages for a violation of the TVPA. Nonetheless, having reviewed the relevant statute and considering the holdings of courts outside this jurisdiction, the Court is persuaded that such an award is appropriate.

"[A]bsent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 70-71 (1992). The Seventh Circuit Court of

Appeals has explained that "[c]ompensation for emotional distress, and punitive damages, are appropriate for intentional torts." *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 112 (7th Cir. 1990) (holding that plaintiff could recover emotional distress damages under the FLSA for a retaliatory discharge claim). And, as the Ninth Circuit Court of Appeals has noted, the TVPA "creates a cause of action for tortious conduct that is ordinarily intentional and outrageous." *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011).

Further, the Tenth Circuit Court of Appeals has explained that emotional distress damages for a violation of the TVPA are an appropriate remedy consistent with the purpose of the statute:

> The forced labor addressed by the TVPA is a categorically different wrong, involving work extracted from victims by the illegal and coercive means specified in the statute. Limiting TVPA victims to the FLSA remedy would *inappropriately* afford criminals engaged in such egregious practices the benefit of the lowest-common-denominator minimum wage set for legitimate employers. As for damages to redress noneconomic harm, particularly suffering related to the squalid, restricted, and threatening working/living conditions imposed on TVPA victims, the case law consistently reflects the propriety of providing the traditional tort remedy of damages for emotional distress caused by outrageous conduct.

*Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013). Finally, a recent survey of relevant cases conducted by a district court in the Eighth Circuit "indicat[ed] a general consensus in agreement with the Tenth Circuit's holding[:]"

> *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1173 (D. Kan. 2018) (stating that "[t]he TVPRA permits trafficking victims to recover compensatory damages for emotional distress"); *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 531 (D. Md. 2016) (stating that "[i]n addition to lost wages, courts have also awarded compensatory damages for emotional distress under the TVPRA.") (citations omitted); *Doe v. Howard*, Civil Action No. 1:11-cv-1105, 2012 WL 3834867, at *18 (E.D. Va. Sep. 4, 2012) (stating that "[e]motional distress damages are a form of compensatory damages and are recoverable in a private cause of action under the TVPA.") (citations omitted); *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 594 (S.D.N.Y. 2012) (finding plaintiff was "entitled to recover emotional distress damages under federal law" because she was subject to human trafficking and forced servitude).

*West v. Butikofer*, No. 19-CV-1039-CJW-KEM, 2020 WL 5245226, at *8 (N.D. Iowa Aug. 18, 2020). Having determined that Plaintiffs may recover an award for emotional distress damages, the Court now turns to a calculation of that award.

"[I]n determining whether the evidence of emotional distress is sufficient to support an award of damages, [the Court] must look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused that distress." *United States v. Balistrieri*, 981 F.2d 916, 932 (7th Cir. 1992). "The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action; consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award for emotional distress." *Id.*

Here, Plaintiffs seek emotional distress damages of $200.00 per day, per Plaintiff, for a total of sixty-four to sixty-seven days. (Pls.' Br. Mot. Default J. 2020 at 28, ECF No. 49). It appears to the Court that such an award is consistent with cases analogous to the instant matter. The court in *West* conducted a survey of cases with similar relevant facts and found that the range of awards for emotional distress damages for victims of TVPA violations spanned between $170.00 to $800.00 per day:

> *Arreguin* [*v. Sanchez*, 398 F. Supp. 3d 1314, 1328 (S.D. Ga. 2019)] (awarding H-2A plaintiffs subjected to substandard work and living conditions with little-to-no pay with $200 per day in emotional distress damages in default judgment); *Belvis v. Colamussi*, CV 16-544 (JFB)(ARL), 2018 WL 3151698, at *7 (E.D.N.Y. Feb. 20, 2018) (awarding H-2B plaintiffs who were subjected to substandard work and living conditions $171 per day in emotional distress damages in default judgment); *Ross*, 325 F. Supp. 3d at 1174 (awarding plaintiff $800 per day for TVPRA emotional distress damages in default judgment when plaintiff was subjected to unpaid, forced labor as an adolescent girl); *Lipenga*, 219 F. Supp. 3d at 531-32 (awarding a Malawian woman working as a domestic servant for little pay, and who endured years of substandard living conditions, verbal abuse, and other humiliation with $400 per day in emotional distress damages in default judgment); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 458 (E.D. Va. 2015) (awarding a trafficked Filipino woman who was denied medical care and outside contact while being forced to

28

work long hours in terrible conditions for low wages with $400 per day in emotional distress damages in default judgment); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 25 (D.D.C. 2013) (awarding trafficked plaintiff who was forced into involuntary labor, isolated from society, and psychologically abused $400 per day for emotional distress in default judgment); *Howard*, [2012 WL 3834867,] at *4 (awarding trafficked plaintiff who was a victim of forced labor and denied medical care $500 per day for emotional distress damages for forced labor incorporating threats of deportation, in addition to $1,250,000 in emotional distress damages for "forced sexual servitude"); *Shukla v. Sharma*, No. 07-CV-2972 (CBA)(CLP), 2012 WL 481796, at *15 (E.D.N.Y. Feb. 14, 2012) (holding that a jury's award of just under $800 per day is not unreasonable even if only for "pain and suffering, mental anguish, shock, and discomfort" in a compelled-labor case).

2020 WL 5245226, at *10. And, in *West*, the court awarded $200 per day in emotional distress damages to H-2A plaintiffs subjected to filthy living conditions without beds, a period without access to hot water or a working stove, and verbal abuse and threats of physical assault and/or actual physical assault. *Id.*

Defendants' conduct violative of the TVPA is described above and need not be repeated in detail here. Through their testimony and affidavits, Plaintiffs have detailed the emotional distress caused by Defendants' actions. Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Jose Albino Leyva, and Simon Gonzalez Hernandez represented that Defendants caused them to worry that, if Plaintiffs stopped working or reported Defendants' conduct, they would be unable to return to the United States on an H-2A visa ever again. (Pls.' Br. Mot. Default J. 2019 Ex. 1 ¶ 24, p. 2; ¶ 24, p. 7; ¶ 31, p. 14; ¶ 28, p. 21-22; ¶ 24, p. 28; ¶ 29, p. 34-35; ¶ 24, p. 41; ¶ 24, p. 46, ECF No. 21-1.). These Plaintiffs further represented that they felt completely hopeless and unsafe. *Id.* at ¶ 23, p. 2; ¶ 28, p. 3; ¶ 23, p. 7; ¶ 28, p. 8; ¶¶ 31, 38, p. 14; ¶¶ 28, 35, p. 21-22; ¶ 23, p. 28; ¶ 28, p. 29; ¶¶ 29, 36, p. 34-35; ¶ 23, p. 41; ¶ 28, p. 42; ¶ 23, p. 46; ¶ 28, p. 47. Additionally, Plaintiffs Gabriel Garcia Arroyo, Valentin Garcia Arroyo, and Luis Lopez Carrasco specifically noted that they suffered

great emotional distress and mental anguish due to Defendants' actions. *Id.* at ¶ 45, p. 14; ¶ 42, p. 22; ¶ 43, p. 35.

Plaintiff Kimberly Delgado testified that Defendants' conduct forced her to deliver her baby alone in Indiana, rather than being able to return home to deliver in Florida with her family and friends. (Hr'g Tr. 10:20-25, 11:1-11, ECF No. 50). These circumstances caused Plaintiff Delgado to be afraid. *Id.* at 11:12-13. In her affidavit, Plaintiff Delgado explained that she could not sleep at night and worried constantly about getting kicked out of the motel, because Defendant Clute had not paid the bill and the motel owner threatened to remove Plaintiffs. (Pls.' Br. Mot. Default J. 2019 Ex. 1 ¶ 47, p. 53, ECF No. 21-1.). Plaintiff Delgado further testified that Defendants caused the other Plaintiffs to fear that, if they returned to Mexico, they would never receive the wages owed to them. (Hr'g Tr. 11:14-22, ECF No. 50). Plaintiff Delgado explained that the circumstances caused by Defendants' conduct were stressful and overwhelming. *Id.* at 15:23-25, 16:1-10. Plaintiff Gabriel Garcia Arroyo testified that Defendants' conduct caused him to feel desperation and like there was nothing he could do. *Id.* at 26:21-25, 27:1-2. He explained that he had no one to turn to for help in the United States, that he did not know where to go, and that these circumstances were very bad for his family in Mexico. *Id.*

The Court finds that it is eminently reasonable that a person would suffer the emotional distress alleged by Plaintiffs due to Defendants' conduct, which included but was not limited to failing to pay Plaintiffs for ten weeks, providing them with substandard housing, failing to provide them with adequate access to food, and threatening them with deportation and physical abuse. Further, the Court finds that an award of $200.00 per day for emotional distress damages for a violation of the TVPA, given Defendants' conduct and the emotional distress alleged by Plaintiffs, is both appropriate and in line with the cases cited above.

Accordingly, the Court finds that Plaintiffs are entitled to emotional distress damages for Defendants' violation of the TVPA in the amount of $200.00 per day, per Plaintiff. Plaintiffs represent that Plaintiffs Jose Albino Leyva, Rogelio Corona Trejo, Simon Gonzalez Hernandez, Enrique Gonzalez Leiva, Raul Gonzalez Leyva, and Kimberly Delgado were subjected to sixty-seven days of TVPA violations, totaling $13,400.00 per person at $200.00 per day. Plaintiffs further represent that Plaintiffs Gabriel Garcia Arroyo, Valentin Garcia Arroyo, and Luis Lopez Carrasco were subjected to sixty-four days of TVPA violations, totaling $12,800.00 per person at $200.00 per day. The Court thus finds that Plaintiffs are entitled to emotional distress damages for Defendants' violation of the TVPA in the amount of $118,800.00, to be distributed to individual Plaintiffs per the amounts stated above.

*3. Statutory Damages*

Plaintiff Kimberly Delgado seeks statutory damages for Defendants' violations of the AWPA. (Pls.' Br. Mot. Default J. 2020 at 28, ECF No. 49).

Upon finding an intentional violation of the AWPA, a court "may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, or other equitable relief," with the exception that "multiple infractions of a single provision of this chapter or of regulations under this chapter shall constitute only one violation for purposes of determining the amount of statutory damages due a plaintiff." 29 U.S.C. § 1854(c)(1)(A). And, as noted by one court, "[i]n awarding damages under the AWPA, courts are generally given much discretion." *Martinez v. Mendoza*, 595 F. Supp. 2d 923, 926 (N.D. Ind. 2009).

As detailed above, Plaintiff Delgado has sufficiently alleged five separate intentional violations of the AWPA: 1) Defendants failed to provide written disclosures concerning the nature

of the position at the time of recruitment, as required by 29 U.S.C. § 1821(a); 2) Defendants failed to post a notice of Plaintiff Delgado's employment rights, as required by 29 U.S.C. § 1821(b); 3) Defendants failed to provide wages when due, as required by 29 U.S.C. § 1822(a); 4) Defendants violated the terms of their work arrangement without justification, in contravention of 29 U.S.C. § 1822(c); and 5) Defendants engaged in discriminatory intimidation and threats for Plaintiff Delgado's assertion of her rights, in violation of 29 U.S.C. § 1855(a). The Court finds that, pursuant to 29 U.S.C. § 1854(c)(1), Plaintiff Delgado is entitled to recover $500.00 for each of these violations, for a total of $2,500.00.

*4. Punitive Damages*

Plaintiffs seek punitive damages for Defendants' violation of the TVPA. (Pls.' Br. Mot. Default J. 2020 at 29, ECF No. 49).

Once more, there appear to be no cases in this jurisdiction addressing the issue of awarding punitive damages for a violation of the TVPA. Nonetheless, having reviewed the holdings of courts outside this jurisdiction, the Court is again persuaded that such an award is appropriate.

The Supreme Court of the United States has explained that, while "[c]ompensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct," punitive damages, by contrast, "serve a broader function; they are aimed at deterrence and retribution." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (quotation marks and citations omitted) (noting that, although compensatory and punitive damages "serve different purposes," they are "usually awarded at the same time by the same decisionmaker"). "Punitive damages are never awarded as a matter of right; the finder of fact, after reviewing the entire record, is called upon to make a 'moral judgment' that the unlawful conduct warrants such an award to punish the wrongdoer and deter others." *Merriweather v.*

*Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 582 (7th Cir. 1996) (citing *Smith v. Wade*, 461 U.S. 30, 52 (1983); *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C. Cir. 1995)). Indeed, a plaintiff may recover punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56 (referring specifically to claims brought under 42 U.S.C. § 1983); *see also Merriweather*, 103 F.3d at 581 ("Punitive damages are proper only on a showing of 'evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others.'" (quoting *Smith*, 461 U.S. at 56)).

As noted in the previous section, "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin*, 503 U.S. at 70-71. And, the Seventh Circuit Court of Appeals has explained that punitive damages are an appropriate remedy for intentional torts. *Travis*, 921 F.2d at 112.

Following the principle noted in *Franklin*, several courts outside this jurisdiction have found that an award of punitive damages is appropriate for a TVPA violation. In evaluating this issue, the Ninth Circuit Court of Appeals "turn[ed] to common law principles to determine whether punitive damages are available under the TVPA civil action provision." *Ditullio*, 662 F.3d at 1098. Noting the Supreme Court's holding in *Franklin*, the Court of Appeals recognized that "[p]unitive damages are generally appropriate under the TVPA civil remedy provision because it creates a cause of action for tortious conduct that is ordinarily intentional and outrageous." *Id.* (citing 503 U.S. at 70-71). The Court of Appeals explained:

> A plaintiff bringing a civil action under the TVPA must prove that the defendant has engaged in human trafficking, which Congress described as "a contemporary manifestation of slavery." Such conduct obviously meets the common law standards for award of punitive damages because it is both intentional and

> outrageous. Moreover, permitting punitive damages is consistent with Congress' purposes in enacting the TVPA, which include increased protection for victims of trafficking and punishment of traffickers.

*Id.* (citation omitted). The Court of Appeals thus concluded that punitive damages are available for a violation of the TVPA, under 18 U.S.C. § 1595. *Id.*

The Tenth Circuit Court of Appeals has similarly found that punitive damages are available for a violation of the TVPA. *Francisco*, 525 F. App'x at 833-35. The Court of Appeals noted that "[p]unitive damages are a well-established component of traditional common law remedies," and, moreover, it was far from clear that Congress indicated an intent to exclude punitive damages from the remedies afforded in the TVPA. *Id.* at 833. The Court of Appeals additionally noted that "evaluating the TVPA's civil remedy in light of the contemporary legal landscape" further supported the conclusion that the text does not exclude punitive damages. *Id.* The Court of Appeals explained that "the traditional use of punitive damages is to punish and deter misconduct involving an element of outrage" and "[t]he TVPA 'creates a cause of action for tortious conduct that is ordinarily intentional and outrageous.'" *Id.* at 834 (quoting *Ditullio*, 662 F.3d at 1098). Accordingly, the Court of Appeals held that punitive damages are available for a violation of the TVPA.

Having determined that the Plaintiffs may recover punitive damages for Defendants' violation of the TVPA, the Court must consider the amount of those damages. Because "defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding," the Supreme Court has noted "concerns over the imprecise manner in which punitive damages systems are administered." *Campbell*, 538 U.S. at 417. Accordingly, the Supreme Court has instructed that courts reviewing punitive damages are to consider three guideposts:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Id.* at 418 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). Of these, "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. In determining the reprehensibility of a defendant's conduct, the court considers whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Campbell*, 538 U.S. at 419. Finally, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.*

On the record before the Court, as alleged in the Amended Complaint, Plaintiffs' affidavits, and testified to at the hearing on damages, the reprehensibility of Defendants' conduct cannot be overstated. Defendants' conduct caused both physical and economic harm and "evinced an indifference to or a reckless disregard of the health or safety" of Plaintiffs, who themselves were financially vulnerable. *See id.* Defendants' conduct involved repeated actions rather than an isolated incident and, finally, the record supports a finding that the caused harm "was the result of intentional malice, trickery, [and] deceit." *Id.*

Defendants recruited Plaintiffs, inducing them to travel from their homes in a different state and different country, on promises that were never fulfilled. Defendants not only failed to reimburse Plaintiffs for their visa and travel expenses, as promised, but further failed to pay

Plaintiffs any wages for approximately ten weeks of work. (Am. Compl. ¶¶ 54, 57, 64-68, 76-79, ECF No. 31). Plaintiffs were forced to sleep on the floor of a refrigerated storage unit and later forced to share beds or sleep on the floor of a motel, which had vermin and bedbugs. *Id.* at ¶¶ 82-84; Hr'g Tr. 14:18-21, ECF No. 50. Plaintiffs were left without meals and adequate kitchen facilities and were forced to go hungry, ration their food, and rely on humanitarian assistance from the Mexican Consulate. (Am. Compl. ¶¶ 85-87, ECF No. 31). When Plaintiffs expressed their concerns and attempted to exercise their rights under the Job Order, they were threatened with deportation, the inability to ever recoup their unpaid wages, and physical harm. *Id.* at ¶¶ 69, 72-73, 88-90, 93-94. Defendants' conduct left Plaintiffs stranded far from home with no financial resources, inadequate shelter, little food, and fear for their physical safety.

As for the second and third factors, the Court finds that the sought amount—an award of punitive damages equal to the award of compensatory damages— is appropriate. A 1:1 ration of punitive damages to compensatory damages is consistent with other cases awarding punitive damages under the TVPA. *See West*, 2020 WL 5245226, at *12 (collecting cases) ("The Court finds that an award of punitive damages at a 1:1 ratio with compensatory damages is appropriate because it is consistent with the awards in other TVPRA cases . . . ."). The compensatory damages in this matter include $84,337.65 in economic damages for Defendants' violations of the TVPA, FLSA, and Indiana law and $118,800.00 for emotional distress damages for Defendants' violation of the TVPA, totaling $203,137.65. The Court thus finds that Plaintiffs are entitled to punitive damages in the amount of $203,137.65 for Defendants' violation of the TVPA, to be distributed to individual Plaintiffs per the amount owed to each for total compensatory damages as noted above.

36

*5. Duplicative Recovery*

In finding that Plaintiffs are entitled to recover damages under the FLSA, TVPA, AWPA, and Indiana law, the Court has considered the issue of whether this would result in a prohibited duplicative recovery for the same alleged harm. *See Volk v. Coler*, 845 F.2d 1422, 1436 (7th Cir. 1988) ("[Plaintiff] may not receive two recoveries for the same alleged harm."). In *Shea v. Galaxie Lumber & Const. Co.*, the Seventh Circuit Court of Appeals found that the plaintiff was entitled to recover liquidated damages for an overtime pay claim and punitive damages for a retaliation claim under the FLSA, as well as punitive damages for a sexual harassment claim under Title VII of the Civil Rights Act of 1964. 152 F.3d 729, 733-36 (7th Cir. 1998). These multiple recoveries were permissible in *Shea* because the defendants' conduct occurred during the course of the plaintiff's employment, with distinct occurrences constituting violations of each federal statute invoked. *Id.* at 731-33.

Similarly, on the allegations in the Amended Complaint, though Defendants' violative conduct is certainly related in many respects, the Court finds that Plaintiffs have adequately pleaded discrete harms encompassed by the relevant statutes. Defendants' failure to pay wages owed to Plaintiffs violated the FLSA, TVPA, and Indiana law, and Plaintiffs seek only the recovery of their unpaid wages and travel expenses for these violations, plus liquidated damages as allowed by the FLSA. *See* 29 U.S.C. § 216(b). Defendants' failure to provide certain disclosures, post notices, pay wages when due, and abide by the terms of their work arrangement, and their discriminatory intimidation and threats toward Plaintiff Delgado violated the AWPA, and Plaintiff Delgado seeks only the recovery of the statutorily allowed damages for each violation. *See* 29 U.S.C. § 1854(c)(1). Finally, Defendants' conduct in forcing Plaintiffs to sleep on the floor of a refrigerated storage unit and later reside in a motel with vermin, threatening harm under

immigration laws, and failing to provide Plaintiffs with adequate access to food violated the TVPA, for which Plaintiffs seek emotional distress and punitive damages.[14] *See* 18 U.S.C. § 1595. Per *Shea*, Plaintiffs are entitled to recover for these harms pursuant to the relevant law, and their recovery under each does not overlap. *See* 152 F.3d 729.

*6. Joint and Several Liability*

As described below, the Court finds that Defendants are jointly and severally liable for the violations of the FLSA and the TVPA. The Court further finds that Defendant Clute is personally liable for one violation of the AWPA, Defendants Windy Prairie Farm and Clute are jointly and severally liable for one violation, and all Defendants are jointly and severally liable for the remaining violations. Finally, the Court finds that Defendant Windy Prairie Farm is personally liable for the violations of Indiana law.

The Court turns first to a discussion of joint and several liability under the FLSA. As explained by one court:

> The FLSA contemplates liability against not only the corporation owing the overtime compensation but also the individual corporate officers: "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."

*Solis v. Int'l Detective & Protective Serv.*, Ltd., 819 F. Supp. 2d 740, 748 (N.D. Ill. 2011) (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir.1991)). Numerous courts have also held that "corporate officers with significant ownership interests, day-to-day control of operations, and involvement in the supervision and payment of employees can be personally liable for the corporation's failure to pay owed wages." *Id.* (collecting cases); *see also Paz v. Piedra*,

---

[14] Plaintiffs allege that Defendants are further liable for breach of contract for violating Indiana law by failing to provide adequate housing and meals, as specified in the Job Order. Any overlap in this conduct and the conduct which Plaintiffs allege violated the TVPA is of no consequence, as Plaintiffs would be entitled to receive the full recovery sought for the alleged violations of Indiana law under the FLSA alone for Defendants' failure to pay wages due.

No. 09CIV03977LAKGWG, 2012 WL 12518495, at *5 (S.D.N.Y. Jan. 12, 2012) ("When two or more entities operate as joint employers of a given worker, each employer is jointly and severally liable to those affected employees for the FLSA violations of all other joint employers."). As previously noted, Defendants are "employers" as defined by the FLSA: Defendant Clute owned and operated Defendant Windy Prairie Farm, where Defendant Nower was both an employee and manager. (Am. Compl. ¶¶ 14, 16, ECF No. 31). And, Defendant Windy Prairie Farm owned and operated the worksite at which Plaintiffs were employed. *Id.* at p. 21. As described by Plaintiff Kimberly Delgado, Defendants Clute and Nower ran Defendant Windy Prairie farm together. (Pls.' Br. Mot. Default J. 2019 Ex. 1 ¶ 15, p. 51, ECF No. 21-1). Defendants controlled the conditions of Plaintiffs' employment, including the manner and means by which Plaintiffs' work was accomplished. (Am. Compl. ¶¶ 49, 51, ECF No. 31). As such, Defendants are jointly and severally liable under the FLSA for Plaintiffs' unpaid wages.

As for liability under the TVPA, the act "makes clear that restitution orders under the TVPA 'shall be issued and enforced in accordance with [18 U.S.C. § 3664(h)] in the same manner as an order under 3663A.'" *United States v. Williams*, 319 F. Supp. 3d 812, 817 (E.D. Va. 2018), *aff'd*, 783 F. App'x 269 (4th Cir. 2019) (quoting 18 U.S.C. § 1593(b)(2)). Per section 3664(h), "if more than one defendant has contributed to a victim's loss, 'the court may make each defendant liable for payment of the full amount of restitution . . . .'" *Id.* (quoting 18 U.S.C. § 3664(h)). Defendants jointly controlled the conditions of Plaintiffs' employment, and Plaintiffs were dependent on Defendants to provide adequate housing and access to food. (Am. Compl. ¶¶ 48-49, 51, 82-87, 107, 133-34, ECF No. 31). While Plaintiffs allege that Defendant Clute threatened to strangle the individual who filed a complaint against him with DOL, Plaintiffs also allege that Defendants—plural—threatened Plaintiffs with adverse consequences under immigration law and

regarding Plaintiffs' recovery of their unpaid wages. *Id.* at ¶¶ 88-96. Defendants all contributed to Plaintiffs' losses under the TVPA and, as permitted by the statute, the Court finds that Defendants are jointly and severally liable for the full restitution amount.

The AWPA allows for recovery against an "agricultural employer," a term which the Court has already found applies to Defendants. 29 U.S.C. §§ 1802(2), 1854(a). The record before the Court supports a finding that Defendants Windy Prairie Farm and Clute are responsible for one AWPA violation, for which they are jointly and severally liable, that Defendant Clute alone is responsible for one AWPA violation, and that all Defendants are responsible for the remaining three AWPA violations, for which they are jointly and severally liable. The Amended Complaint and Plaintiff Delgado's affidavit allege that she was recruited by Defendants Windy Prairie Farm and Clute to work for Defendants during the 2019 growing season. (Pls.' Br. Mot. Default J. 2019 Ex. 1 ¶¶ 16-17, p. 51, ECF No. 21-1; Am. Compl. ¶¶ 25, 32-34, ECF No. 31). Plaintiff Delgado further represented that Defendant Clute threatened her when he discovered that a complaint had been made to DOL. (Pls.' Br. Mot. Default J. 2019 Ex. 1 at ¶¶ 52-54, p. 53; *see also* Am. Compl. ¶ 93, ECF No. 31). Defendants Windy Prairie Farm and Clute are thus jointly and severally liable for the following AWPA violation: the failure to provide disclosures concerning the nature of the position at the time of recruitment. Defendant Clute is responsible for the following AWPA violation: threatening Plaintiff Delgado for her assertion of her rights. Because Defendants Clute and Nower jointly controlled the conditions of Plaintiffs' employment, and because Defendant Windy Prairie Farm owned and operated the worksite, the Court finds that they are jointly and severally liable for the remaining three violations of the AWPA: 1) the failure to post a notice of Plaintiff Delgado's employment rights; 2) the failure to provide wages when due; and 3) the violation of the terms of their work arrangement without justification.

Finally, Defendant Windy Prairie Farm is solely liable for the breach of contract claim pursuant to Indiana law. The Job Order in this matter, representing the contractual agreement of the parties, lists Plaintiffs' employer as Defendant Windy Prairie Farm. (Am. Compl. p. 21, ECF No. 31). Plaintiffs allege that the Job Order created a contract between themselves and Defendants, but Plaintiffs do not explain how Defendants Clute or Nower were individual parties to this contract. Defendant Windy Prairie Farm is a limited liability company, and the Amended Complaint does not provide its membership information beyond a statement that it is owned by Defendant Clute. (Am. Compl. ¶¶ 10, 14, ECF No. 31). "The purpose of a limited liability company is to provide individuals the same protection enjoyed by shareholders of a corporation through creation of a distinct legal entity, while at the same time featuring pass-through taxation similar to that enjoyed by individuals in a partnership." *CMG Worldwide, Inc. v. RALS-MM LLC*, No. 1:11-CV-00719-RLY, 2012 WL 4514142, at *4 (S.D. Ind. Sept. 28, 2012). Under Indiana law,

> A member, a manager, an agent, or an employee of a limited liability company is not personally liable for the debts, obligations, or liabilities of the limited liability company, whether arising in contract, tort, or otherwise, or for the acts or omissions of any other member, manager, agent, or employee of the limited liability company. A member, a manager, an agent, or an employee of a limited liability company may be personally liable for the person's own acts or omissions.

Ind. Code § 23-18-3-3(a). Accordingly, "individuals associated with a limited liability company are not personally liable merely because of their ownership in the entity." *CMG Worldwide, Inc.*, 2012 WL 4514142, at *4. "[L]iability for the obligations of the LLC can only fall on an individual member if they disregarded the 'corporate form' so as to control or manipulate it as an instrumentality of their own, similar to piercing the corporate veil," and Plaintiffs have not offered

such allegations here.[15] *Id.* Accordingly, because Defendant Windy Prairie Farm was the only defendant that was party to the contract, it is solely liable for the claimed breach. Nonetheless, because any recovery for the breach of contract claims is incorporated into Plaintiff's recovery under the FLSA and TVPA, Defendant Windy Prairie Farm's sole liability for the breach of contract claims does not impact the final damages calculation.

*7. Attorneys' Fees*

Plaintiffs state that they are statutorily entitled to attorneys' fees upon prevailing on their civil claims under the TVPA and the FLSA. (Pls.' Br. Mot. Default J. 2020 at 30, ECF No. 49).

Both the TVPA and the FLSA provide for an award of attorneys' fees to a prevailing plaintiff. 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter . . . may recover damages and reasonable attorneys fees."); 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). "To determine a reasonable fee, the district court uses the lodestar method, multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Seventh Circuit Court of Appeals has "defined a reasonable hourly rate as one that is 'derived from the market rate for the services rendered.'" *Id.* at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). Importantly, "courts have consistently held that entities providing *pro bono* representation may receive attorney's fees where appropriate." *Mays v. Springborn*, No. 01-CV-

---

[15] Under Indiana law, the corporate form may be disregarded if the corporation was used "to promote fraud, injustice or illegal activities." *Cont'l Cas. Co. v. Symons*, 817 F.3d 979, 993-94 (7th Cir. 2016) (quoting *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994)). While that certainly may have occurred in the instant case, Plaintiffs neither advance the argument that the corporate veil should be pierced nor offer the Court allegations that would allow it to determine whether Defendant Nower, in addition to Defendant Clute, was a member of Defendant Windy Prairie Farm.

1254, 2014 WL 12730575, at *3 (C.D. Ill. Nov. 6, 2014) (citing *Blum v. Stenson*, 465 U.S. 886, 893-95 (1984); *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 235 (4th Cir. 2001)).

Plaintiffs note their recognition that, pursuant to the Federal Rules of Civil Procedure, an award of attorneys' fees may only be granted after the filing of a separate motion and an award of costs given only after submission of the appropriate form, both to be submitted within fourteen days following entry of final judgment. (Pls.' Br. Mot. Default J. 2020 at 32, ECF No. 49 (citing Fed. R. Civ. P. 54(d)(2)). Because the Court recommends that Plaintiffs' motion for default judgment be granted, the Court further recommends that Plaintiffs be permitted to file the appropriate motion seeking an award of attorneys' fees after entry of such judgment.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion for Entry of Default Judgment [DE 44] and enter judgment in favor of Plaintiffs Enrique Gonzalez Leiva, Rogelio Corona Trejo, Gabriel Garcia Arroyo, Valentin Garcia Arroyo, Raul Gonzalez Leyva, Luis Lopez Carrasco, Simon Gonzalez Hernandez, Jose Albino Leyva, and Kimberly Delgado in the sum of $460,972.07, comprised of:

1. $84,337.65 in economic damages, owed jointly and severally by all Defendants, to be awarded to individual Plaintiffs as follows:

   a. Plaintiff Jose Albino Leyva: $9,715.27

   b. Plaintiff Rogelio Corona Trejo: $9,756.27

   c. Plaintiff Gabriel Garcia Arroyo: $9,447.95

   d. Plaintiff Valentin Garcia Arroyo: $9,447.95

   e. Plaintiff Simon Gonzalez Hernandez: $9,715.27

   f. Plaintiff Enrique Gonzalez Leiva: $9,715.27

     g.  Plaintiff Raul Gonzalez Leyva: $9,715.27

     h.  Plaintiff Luis Lopez Carrasco: $9,463.95

     i.  Plaintiff Kimberly Delgado: $7,360.42

2.  $52,196.76 in liquidated damages pursuant to the FLSA, owed jointly and severally by all Defendants, to be awarded to individual Plaintiffs as follows:

     a.  Plaintiff Jose Albino Leyva: $6,143.97;

     b.  Plaintiff Rogelio Corona Trejo: $6,143.97;

     c.  Plaintiff Gabriel Garcia Arroyo: $5,708.97;

     d.  Plaintiff Valentin Garcia Arroyo: $5,708.97;

     e.  Plaintiff Simon Gonzalez Hernandez: $6,143.97;

     f.  Plaintiff Enrique Gonzalez Leiva: $6,143.97;

     g.  Plaintiff Raul Gonzalez Leyva: $6,143.97;

     h.  Plaintiff Luis Lopez Carrasco: $5,708.97;

     i.  Plaintiff Kimberly Delgado: $4,350.00.

3.  $118,800.00 in emotional distress damages, owed jointly and severally by all Defendants, to be awarded to individual Plaintiffs as follows:

     a.  Plaintiff Jose Albino Leyva: $13,400.00

     b.  Plaintiff Rogelio Corona Trejo: $13,400.00

     c.  Plaintiff Gabriel Garcia Arroyo: $12,800.00

     d.  Plaintiff Valentin Garcia Arroyo: $12,800.00

     e.  Plaintiff Simon Gonzalez Hernandez: $13,400.00

     f.  Plaintiff Enrique Gonzalez Leiva: $13,400.00

     g.  Plaintiff Raul Gonzalez Leyva: $13,400.00

      h.  Plaintiff Luis Lopez Carrasco: $12,800.00

      i.  Plaintiff Kimberly Delgado: $13,400.00

4.  $2,500.00 in statutory damages under the AWPA, to be awarded solely to Plaintiff Kimberly Delgado as follows:

      a.  Defendants Windy Prairie Farm and Keith Clute, jointly and severally, owe: $500.00

      b.  Defendant Keith Clute owes: $500.00

      c.  Defendants Windy Prairie Farm, Keith Clute, and Shawn Nower, jointly and severally, owe: $1,500.00

5.  $203,137.65 in punitive damages, owed jointly and severally by all Defendants, to be awarded to individual Plaintiffs as follows:

      a.  Plaintiff Jose Albino Leyva: $23,115.27

      b.  Plaintiff Rogelio Corona Trejo: $23,156.27

      c.  Plaintiff Gabriel Garcia Arroyo: $22,247.95

      d.  Plaintiff Valentin Garcia Arroyo: $22,247.95

      e.  Plaintiff Simon Gonzalez Hernandez: $23,115.27

      f.  Plaintiff Enrique Gonzalez Leiva: $23,115.27

      g.  Plaintiff Raul Gonzalez Leyva: $23,115.27

      h.  Plaintiff Luis Lopez Carrasco: $22,263.95

      i.  Plaintiff Kimberly Delgado: $20,760.42

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The

failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 16th day of December, 2020.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT